IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No.: 5:25-cv-00385-M-BM

| | |
|---|---|
| INGENIOSHARE, LLC, | |
| *Plaintiff*, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EPIC GAMES INC.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)** |
| v. | |
| EPIC GAMES, INC., | |
| *Defendant*. | |

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................... 1

II. STATEMENT OF RELEVANT FACTS ............................................................ 2

    A. Overview of the Asserted Patents and Claims ........................................ 3

    B. Prior Proceedings and the Federal Circuit's Construction of "Network Based Portal" ......................................................................................... 5

III. LEGAL STANDARDS ....................................................................................... 6

    A. Patent Eligibility Under Section 101 is Often Resolved on the Pleadings Through a Rule 12(b)(6) Motion .......................................................... 6

    B. The Supreme Court's Two-Step Framework for Evaluating Patent Eligibility Under Section 101 (The *Alice* Test) ..................................... 8

IV. THE CLAIMS OF THE ASSERTED PATENTS ARE INELIGIBLE FOR PATENT PROTECTION UNDER SECTION 101 ............................................. 9

    A. The Asserted Patents' Claims Are Directed to the Abstract Idea of Managing Electronic Communications (*Alice* Step One) ................... 10

    B. The Asserted Patents' Claims Do Not Recite an "Inventive Concept" (*Alice* Step Two) ............................................................................... 15

    C. The Remaining Asserted Claims Fail to Correct the Deficiencies Identified for Representative Claim 1 of the '810 Patent ...................... 18

V. CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

CASES

*Affinity Labs of Texas, LLC v. DirectTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)................................................................12, 14, 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)........................................................................8, 9, 11, 15

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016).......................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................6

*Bilski v. Kappos*,
    561 U.S. 593 (2010).....................................................................................15

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
    113 F.4th 1359 (Fed. Cir. 2024) ...........................................................13, 15, 17

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)........................................................................14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014).......................................................................9

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017)......................................................................11

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)..................................................................16, 18

*directPacket Research, Inc. v. Polycom, Inc.*,
    2025 WL 1752247 (Fed. Cir. June 25, 2025) .................................................9, 20

*EasyWeb Innovations, LLC v. Twitter, Inc.*,
    689 F. App'x 969 (Fed. Cir. 2017) .................................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016).................................................................13, 16, 19

*Epic Games, Inc. v. IngenioShare, LLC*,
    2025 WL 1189931 (Fed. Cir. Apr. 24, 2025) ............................................. passim

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)..................................................................8

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)........................................................11, 15

*Intell. Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017)..................................................................8

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)........................................................12, 17

*LendingTree, LLC v. Zillow, Inc.*,
   656 F. App'x 991 (Fed. Cir. 2016) ...........................................................12

*Mankes v. Fandango, LLC*,
   238 F. Supp. 3d 751 (E.D.N.C. 2017)........................................................7

*Mobile Acuity Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024) ................................................................9

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016)..................................................................9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com*,
   591 F.3d 250 (4th Cir. 2009) .....................................................................6

*NetSoc, LLC v. Match Grp., LLC*,
   838 F. App'x 544 (Fed. Cir. 2020) ...................................................12, 17

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ...........................................................15, 17

*Recentive Analytics, Inc. v. Fox Corp.*,
   134 F.4th 1205 (Fed. Cir. 2025) ..............................................................10

*SAP Am. Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..........................................................7, 18

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017).....................................................................7

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016).................................................................18

*Trinity Info Media, LLC v. Covalent, Inc.*,
   72 F.4th 1355 (Fed. Cir. 2023) ............................................................7, 14

-iii-

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)...................................................................10, 12

*Ubisoft Enter., S.A. v. Yousician Oy*,
  401 F. Supp. 3d 644 (E.D.N.C. 2019).....................................................................7

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014)................................................................................17

*Uniloc USA, Inc. v. ADP, LLC*,
  772 F. App'x 890 (Fed. Cir. 2019) ........................................................................12

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ......................................................................13, 17

*Voit Techs. LLC v. Del-Ton, Inc.*,
  2018 WL 385188 (E.D.N.C. Jan. 11, 2018) ...........................................................7

## STATUTES

35 U.S.C. § 101................................................................................................. passim

35 U.S.C. § 311(b) ...............................................................................................5

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ........................................................1, 6, 7, 20

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Epic Games, Inc. ("Epic") respectfully requests that the Court dismiss Plaintiff IngenioShare, LLC's claims of infringement under U.S. Patent Nos. 10,142,810 ("the '810 patent"), 10,492,038 ("the '038 patent"), and 10,708,727 ("the '727 patent") (collectively, "the Asserted Patents"). The claims of these patents amount to nothing more than the abstract idea of managing electronic communications, rendering them invalid under 35 U.S.C. § 101. Accordingly, the Complaint fails to state a claim upon which relief can be granted.

## I.  INTRODUCTION

U.S. patent law provides protection for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Mere abstract ideas—unlike actual processes and machines—are ineligible for patent protection. The Supreme Court has instructed that any patent claim directed to an abstract idea is invalid under § 101 as a matter of law unless the claim recites an "inventive concept" that transforms the abstract idea into a patent-eligible application of that idea. Claims are not generally eligible for patent protection if they describe a result without also describing the method for accomplishing that result; nor are claims patent-eligible if they describe a process performed by a computer that is analogous to something a person could do. *See*, *e.g.*, *Apple, Inc. v. Ameranth, Inc*., 842 F.3d 1229, 1244 (Fed. Cir. 2016) (holding that "an effect or result dissociated from any method by which it is accomplished is not directed to patent-eligible subject matter") (quotation omitted); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding claims directed to an abstract idea where they recite computer-implemented email processing functions similar to those performed in "a brick-and-mortar post office").

The claims of the Asserted Patents, as the Federal Circuit recognized in an earlier case, generally recite "functionality for managing electronic communications." *Epic Games, Inc. v.*

*IngenioShare, LLC*, 2025 WL 1189931, at *1 (Fed. Cir. Apr. 24, 2025). The claims are written broadly, using result-oriented language to describe steps analogous to those that can be performed by humans—steps like allowing a user to select a type of communication and to block communications from other users. The Federal Circuit has held claims that cover similar subject matter to be abstract in various cases. *E.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (affirming district court's judgment that claims directed to a method for routing information were ineligible under § 101); *NetSoc, LLC v. Match Grp., LLC*, 838 F. App'x 544, 548 (Fed. Cir. 2020) (holding claims relating to "enabling" a user to send a message to other users "while shielding" user contact information to be abstract). Further, the claims lack any inventive concept and instead rely only on generic components like an "electronic device" and "network-based portal."

The Federal Circuit—and courts in this District—have recognized that eligibility under § 101 is appropriately resolved on the pleadings. Epic respectfully submits that the claims of the Asserted Patents should be held ineligible, and Plaintiff's claims of infringement dismissed.

## II. STATEMENT OF RELEVANT FACTS

This is a patent infringement case. Plaintiff filed the Complaint on July 2, 2025, accusing Epic of infringing claims 1 and 11 of the '810 patent, claims 46 and 58–62 of the '038 patent, and claims 1–3, 6–9, and 15–17 of the '727 patent (collectively, "the Asserted Claims"). *See* Dkt. 1 ("Complaint") ¶¶106, 123, 129, 146, 152, 167.[1]

---

[1] The '810, '038, and '727 patents are available at Dkts. 1-1, 1-3, and 1-5, respectively.

## A. Overview of the Asserted Patents and Claims

The Asserted Patents "are generally directed to managing electronic communications." *IngenioShare*, 2025 WL 1189931, at *1. They are related, have the same written description,[2] and all expired on December 7, 2024. The patent specifications state that, at the time of the purported inventions, the "ways that others can send us information [had] increased significantly" to include communication by way of "standard desk phones, fax, cell phones, electronic mails, and instant messages." '810 patent at 1:49–53. They observe that "[m]anaging information from all such different modes [of communication] can be quite time consuming" because there "are people we like to communicate with, and there are those we prefer to avoid" and "we can have more than one phone number and multiple electronic mail addresses." *Id*. at 1:53–58. The patents assert that there was thus "a need to help manage the numerous modes of communication" and sought to provide "a computer-implemented system and method to manage the communication of a user" to address this need. *Id*. at 1:59–67.

The Asserted Patents recite substantially similar claims that cover methods and apparatus for managing electronic communications. Independent claim 1 of the '810 patent is representative:[3]

> A computer-implemented method for managing electronic communications using at least a network-based portal at least based on Internet protocol, the method comprising:
>
> ***providing a plurality of communication options to a first user*** to be selected as a selected option of communication for a message from the first user to a second user via an electronic device associated with the second user, with the first user being identified at least depending on a prior registration process by the first user regarding the use of the network-based portal, and with the plurality of communication options

---

[2] For simplicity and clarity, only the '810 patent specification is cited in this brief. All language cited from the '810 patent specification can also be found in the '727 and '038 patent specifications.

[3] All asserted claims identified in the Complaint are presented in Ex. A.

provided to the first user to send messages to the electronic device associated with the second user,

> wherein the plurality of communication options include text messaging and voice communication, and

> wherein all of the communication options use one identifier associated with the second user for the second user to receive messages, at least in view of the network-based portal being based on the Internet protocol;

*receiving an indication regarding one of the plurality of communication options*, via the network-based portal, from an electronic device associated with the first user, the indication indicating the selected option of communication for the message from the plurality of communication options provided;

*permitting the second user to block the first user* from reaching the second user via the network-based portal; and

*enabling*, via the network-based portal, *the message to be received by the second user* through the electronic device associated with the second user, *using the selected option of communication*, based on the one identifier associated with the second user, in view of the second user not blocking the first user from reaching the second user,

> wherein a piece of information regarding the second user blocking the first user from reaching the second user is stored in a storage medium if the second user has blocked the first user from reaching the second user, with the piece of information being based on at least an input previously submitted by the second user,

wherein the method comprises *determining availability of the second user*,

wherein the method requires contact information associated with the second user to allow the second user to receive messages via the network-based portal,

wherein even when the message is received by the second user through the electronic device associated with the second user based on the one identifier associated with the second user, the contact information associated with the second user is not provided via the network-based portal to the first user through the electronic device associated with the first user, and

wherein the one identifier associated with the second user is distinct from the contact information associated with the second user.[4]

---

[4] All emphasis in this brief has been added unless otherwise indicated.

As shown, the claimed method recites five functions: (1) providing communication options to a first user for communicating with a second user; (2) selecting a mode of communication for communicating with the second user; (3) allowing the second user to block communications from the first user; (4) sending a message to the second user using the selected mode of communication; and (5) determining the availability of the second user. Of note, these functions are limited to the results; the claims do not provide details about *how* the results are achieved. The claims also recite various "wherein" clauses that describe types of information (e.g., "contact information" and "identifiers") and communication options that can be selected (text versus voice).

The other asserted independent claims recite substantively identical functions and "wherein" clauses. *See* Ex. A at 1–3 (comparing asserted independent claims of the '810, '038, and '727 patents side-by-side).

### B. Prior Proceedings and the Federal Circuit's Construction of "Network-Based Portal"

In June of 2021, Plaintiff sued Epic in the Western District of Texas, alleging infringement of the same patents at issue here (plus one more). Complaint ¶¶89–90. That case was dismissed for improper venue less than a year later. *Id.* ¶91. While the case was pending, Epic filed petitions for *Inter Partes* Review ("IPR") of the Asserted Patents before the U.S. Patent Trial and Appeal Board ("PTAB"). The PTAB instituted review, but ultimately found that Epic had not demonstrated that the challenged claims were obvious over the cited prior art.[5] The PTAB's decision was based on its construction of the claim term "network-based portal" as "residing on

---

[5] IPRs can only be used to challenge the validity of patent claims based on patent or printed publication prior art. *See* 35 U.S.C. § 311(b). Ineligibility under 35 U.S.C. § 101 cannot be raised in an IPR.

the server side of a network." *See IngenioShare*, 2025 WL 1189931, at *1. Epic appealed the PTAB's final written decisions, and the Federal Circuit affirmed on April 24, 2025. *Id*.

The Federal Circuit's decision considered the proper claim construction of "network-based portal." The court recognized that the Asserted Claims recite "functionality for managing electronic communications, including providing communication options to a user, selecting different communication modes or options, sending and receiving messages, and allowing a user to block communications and control the sharing of contact information" and referred generally to that claimed functionality as "communications management functionality." *IngenioShare*, 2025 WL 1189931, at *1. The court determined that the patents' specification, "while not a model of clarity," at least indicated that "the portal does not reside on the phone." *Id*. at *3–4. The Federal Circuit further determined that extrinsic dictionary definitions supported the PTAB's finding "that a portal resides on the server side of the network." *Id*. at *4.

## III.  LEGAL STANDARDS

### A.  Patent Eligibility Under Section 101 is Often Resolved on the Pleadings Through a Rule 12(b)(6) Motion

A claim cannot survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court must accept as true all factual allegations pleaded and construe them in the light most favorable to the nonmoving party, it should not accept allegations that are "legal conclusions, elements of a cause of action, … bare assertions devoid of further factual enhancement[,] … 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court also need not "accept as true

-6-

allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909, 913 (Fed. Cir. 2017) (affirming Rule 12(b)(6) dismissal of asserted claims directed to "the abstract idea of communicating information about a mailpiece by use of a marking") (quotation omitted).

Patent eligibility under § 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also*, *e.g.*, *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." (quotations omitted) (citing *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases))). Indeed, courts in this District have, on multiple occasions, dismissed claims of infringement under § 101 at the pleading stage. *E.g.*, *Voit Techs. LLC v. Del-Ton, Inc.*, No. 17-CV-259, 2018 WL 385188, at *2 (E.D.N.C. Jan. 11, 2018) (granting Rule 12(b)(6) motion to dismiss where claims were directed to the abstract idea of transmitting compressed images from one computer to another to facilitate buying and selling goods), *aff'd*, 757 F. App'x 1000 (Fed. Cir. 2019); *Ubisoft Ent., S.A. v. Yousician Oy*, 401 F. Supp. 3d 644, 648–50 (E.D.N.C. 2019) (granting Rule 12(b)(6) motion to dismiss, where claims were directed to "the abstract idea of teaching guitar by evaluating a user's performance and generating appropriate exercises to improve that performance" and "focused on the use of generic computer network technology to perform a well-established, real world practice") (quotations omitted), *aff'd* 814 F. App'x 588 (Fed. Cir. 2020); *Mankes v. Fandango, LLC*, 238 F. Supp. 3d 751, 758 (E.D.N.C. 2017) (granting Rule 12(b)(6) motion to dismiss, where claims were directed to the abstract idea of allocating, tracking, and controlling inventory "using

standardized computers to store, allocate, communicate, and receive data over the Internet"), *aff'd*, 720 F. App'x 1022 (Mem) (Fed. Cir. 2018).

**B.** **The Supreme Court's Two-Step Framework for Evaluating Patent Eligibility Under Section 101 (The *Alice* Test)**

In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, the Supreme Court prescribed a two-step framework for courts to use when evaluating whether claimed subject matter is patent-eligible under § 101. 573 U.S. 208, 217 (2014). First, a court must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id*. at 217–18. To evaluate claims under *Alice* Step One, courts look at "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (quotations omitted). "In cases involving software innovations, this inquiry often turns on whether the claims focus on the specific asserted improvement in computer capabilities … or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quotations omitted & alteration in original). Generally, a claim that describes "an effect or result dissociated from any method by which it is accomplished is not directed to patent-eligible subject matter." *Apple*, 842 F.3d at 1244 (quotation omitted). Further, the Federal Circuit has instructed that it can be useful to consider whether the claims are analogous to "human-practical concepts" in evaluating eligibility. *E.g.*, *Symantec*, 838 F.3d at 1317 (finding claims directed to an abstract idea where they recite computer-implemented email processing functions similar to those performed in "a brick-and-mortar post office").

If the claims are directed to an abstract idea, the second step of the *Alice* test is to determine whether they contain an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the

abstract idea itself." *Alice*, 573 U.S. at 217–18 (cleaned up). The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 223 ("if a patent's recitation of a computer amounts to a mere instruction to 'implement' an abstract idea 'on … a computer,' … that addition cannot impart patent eligibility") (citation omitted). "[L]imiting the use of an abstract idea 'to a particular technological environment'" is similarly insufficient to transform the abstract idea into a patentable invention. *Id.* (citation omitted).

The Court need not perform a separate two-step *Alice* analysis for each Asserted Claim if "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (quotation omitted); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324, n.6 (Fed. Cir. 2016). Rather, "[l]imiting the analysis of a § 101 challenge to representative claims is appropriate when the claims at issue are substantially similar and linked to the same ineligible concept." *directPacket Rsch., Inc. v. Polycom, Inc.*, No. 2024-1147, 2025 WL 1752247, at *3 (Fed. Cir. June 25, 2025) (quotation omitted). "District courts have discretion to require parties litigating Section 101 motions to identify representative claims and to articulate why (or why not) claims are representative." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (citation omitted).

## IV.    THE CLAIMS OF THE ASSERTED PATENTS ARE INELIGIBLE FOR PATENT PROTECTION UNDER SECTION 101

The claims of the Asserted Patents are directed to the abstract idea of managing electronic communications. They recite results-oriented functional limitations that are analogous to human-performed processes and are similar in scope to claims the Federal Circuit has held abstract in other cases. Further, the Asserted Claims rely on generic computer components to carry out the abstract idea, which is not sufficient to supply an inventive concept. Application of the two-step

*Alice* framework demonstrates that the claims are ineligible for patent protection under 35 U.S.C. § 101.

### A.   The Asserted Patents' Claims Are Directed to the Abstract Idea of Managing Electronic Communications (*Alice* Step One)

The Asserted Claims recite methods and apparatus for managing electronic communications and are written "using result-based functional language." *Two-Way Media*, 874 F.3d at 1337 (affirming district court's judgment that claims directed to a method for routing information were ineligible under § 101). Representative claim 1 of the '810 patent recites five functions: (1) "providing a plurality of communication options to a first user to be selected … for a message from the first user to a second user"; (2) "receiving an indication regarding one of the plurality of communication options"; (3) "permitting the second user to block the first user"; (4) "enabling … the message to be received by the second user … using the selected option of communication"; and (5) "determining availability of the second user." *See IngenioShare*, 2025 WL 1189931, at *1. Though the claim requires functional results—communication options are provided to and selected by a user, a message that includes particular content is sent, user availability is determined, and users are allowed to be blocked—the claim does not describe details for *how to achieve* these results in any concrete way. Patent protection is not available for such result-oriented claims, because "[a]llowing a claim that functionally describes a mere concept without disclosing *how to implement* that concept risks defeating the very purpose of the patent system." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025) (collecting cases); *see also*, *e.g.*, *Two-Way Media*, 874 F.3d. at 1337 (affirming patent-ineligibility of a claim that "requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way").

Further, the claimed functions are directly analogous to processes a human could perform—another hallmark of abstractness. *E.g.*, *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("we have applied the 'abstract idea' exception to encompass inventions pertaining to methods of organizing human activity"). Consider a receptionist in an office building. When a visitor arrives and wants to communicate with an employee, the receptionist will provide the visitor options for doing so ("providing a plurality of communication options to a first user to be selected"). For example, if the employee is available to speak in person ("determining availability of the second user"), the receptionist may offer to escort the visitor to the employee's office. The receptionist may also offer to take a message or provide the visitor with the employee's voicemail. The visitor can pick the preferred option ("receiving an indication regarding one of the … communication options"), and the receptionist will facilitate the communication ("enabling … the message to be received by the second user ... using the selected option of communication"). The receptionist can also prevent certain visitors from communicating with the employee, at the employee's direction ("permitting the second user to block the first user"). The receptionist may also require visitors to register (i.e., identify themselves via a "registration process") before they are allowed to communicate with employees.

At most, the Asserted Claims automate these human-performable processes. This is not enough to confer eligibility. *E.g.*, *Alice*, 573 U.S. at 225 (claim abstract where "each step does no more than require a generic computer to perform generic computer functions"); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("Our prior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.") (collecting cases). Each of the claimed communications management functions is "a broad and familiar concept concerning information distribution that is

untethered to any specific or concrete way of implementing it." *Affinity Labs of Tex., LLC v. DirectTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016). Indeed, the Complaint provides nothing more than conclusory statements to assert otherwise. *See* Complaint 1 ¶¶25, 40, 55 (alleging that certain claim elements "were not previously performed, and could not be performed, by a human").

Moreover, the Federal Circuit has held claims reciting similar communications management functionality directed to abstract ideas—yet another indication of ineligibility. *E.g.*, *LendingTree, LLC v. Zillow, Inc*., 656 F. App'x 991, 995 (Fed. Cir. 2016) ("[B]oth this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases.") (quotation omitted). For example, the Federal Circuit has held claims directed to sending and receiving communications to be abstract. *E.g.*, *Two-Way Media*, 874 F.3d at 1337 (claims directed to sending information, directing the sent information to particular destinations, and accumulating records about the sent information were abstract). It has also held claims relating to "enabling" a user to send a message to other users "while shielding" user contact information to be abstract. *NetSoc*, 838 F. App'x at 548. It has also held claims directed to selecting different modes of communication to be abstract. *E.g.*, *EasyWeb Innovations, LLC v. Twitter, Inc*., 689 F. App'x 969, 971 (Fed. Cir. 2017) (holding claims that recited converting messages from a first to a second format to be directed to the abstract "concepts of receiving, authenticating, and publishing data"); *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (holding claims that recited "causing communication, over a communication medium and to a receiving device" abstract where the specification defined communication medium "broadly including the Internet and telephone networks"). It has also held claims relating to determining user availability to be abstract. *E.g.*, *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 901 (Fed. Cir. 2019) (claims directed to "provid[ing] an unavailability

-12-

indication ... or an availability indication" based on various information covered "an abstract idea" (second alteration in original)). It has also held claims directed to verifying user identity to be abstract. *E.g.*, *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1353 (Fed. Cir. 2021) (claims directed to "verifying the identity of a user to facilitate a transaction is a fundamental economic practice" were abstract, as this practice existed long before the use of "computers and Internet transactions").

In short, the functional aspects of the representative claim are simply a combination of abstract ideas. The Federal Circuit has recognized that "the combination of two abstract ideas does not render an abstract idea less abstract." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024), cert. denied, 145 S. Ct. 1924 (2025). All that remains are various "wherein" clauses defining the type of data used by the functions—the nature of "identifiers," for example, and "contact information"—and the types of communications managed by the functions—such as "text messaging and voice communication." '810 patent, claim 1. None of this is sufficient to render the claims non-abstract. *E.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("Information as such is an intangible. Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.") (citations omitted). Nor does the length of this (or any other) claim save it from abstractness. *E.g.*, *id.* at 1351 ("Though lengthy and numerous, the claims do not go beyond requiring the collection, analysis, and display of available information in a particular field, stating those functions in general terms[.]").

Presumably aware of the vulnerability of its claims under § 101, Plaintiff alleges in its Complaint that the Asserted Claims are "utilized in computing apparatuses." Complaint ¶29; *id.* ¶¶44, 59 (similar). But "[a]s the Supreme Court stated in *Alice*, 'generic computer implementation'

-13-

is insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention." *Affinity Labs*, 838 F.3d at 1262-63 (citation omitted). The only "computing apparatuses" recited in the claims[6] are generic computer components—a "network-based portal" and "electronic device[s]." *E.g.*, '810 patent, claim 1. The Federal Circuit defined "network-based portal" simply as "residing on the server side of a network." *IngenioShare*, 2025 WL 1189931, at *1, *5. And the Asserted Patents' specification teaches that the "electronic device[s] can be any computing device[s] having communication capabilities," including, for example, "personal computers, personal digital assistants, pagers or mobile telephones." '810 patent at 8:13–17. The Complaint does not allege that the claims improve the functioning of a computer itself, nor could it: the claims "merely seek[] to use computers as a tool, not [] an improvement in computer capabilities." *Trinity Info Media*, 72 F.4th at 1363. Indeed, the patents' specification confirms that the inventors sought "to help manage the numerous modes of communication," '810 patent at 1:60–61—that is, to perform the abstract idea of managing electronic communications—not to improve computer technology. *E.g.*, *Trinity Info Media*, 72 F.4th at 1363 ("The specifications frame the inventor's problem in terms of how to improve existing polling systems by performing progressive polling … These passages confirm that the problem facing the inventor was how to perform the abstract idea of matching based on questioning, not an improvement to computer technology.").

The Complaint also alleges, without elaboration, that the Asserted Claims "solve[] real-world, technological problems" and "address the technical problems and challenges in the art, thereby providing specific technological solutions that improved the state of the art." Complaint

---

[6] To the extent Plaintiff is trying to rely on its infringement allegations or even the specification for eligibility purposes, this is improper: "the § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (cleaned up).

¶¶ 28–30; *id*. ¶¶43, 45, 58, 60 (similar). Not so: both the problem identified (how to manage different types of communications) and the solution claimed (allowing selection between different communication modes and different communicating parties) in the patents existed well before computers. *E.g.*, *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) (claims were abstract, and not directed to computer-specific problems, where "[b]oth the [claimed] solution (names based on content) and the problems (access to, retrieval of, and redundancy control of information) have long predated computers"). Further, as explained above, the Asserted Claims recite only results, not any particular computer structure or algorithms for achieving those results. *E.g.*, *Broadband iTV*, 113 F.4th at 1368–69 (claims directed to a computer user interface "do not recite an improved structure or function *within* a user guide, but rather, are directed to arranging content in a particular order," which "is not a sufficient technological solution to a technological problem, but rather a results-oriented abstract idea"). At most, the claims are directed to a particular technological environment—but this does not confer eligibility. *See Alice*, 573 U.S. at 223 ("limiting the use of an abstract idea to a particular technological environment" is "not enough for patent eligibility" (quotation omitted)); *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) (explaining that "limiting an abstract idea to one field of use ... d[oes] not make the concept patentable"); *TLI Commc'ns*, 823 F.3d at 613 ("although the claims limit the abstract idea to a particular environment—a mobile telephone system—that does not make the claims any less abstract").

Thus, under *Alice*, the representative claim is—and, by extension, all Asserted Claims are—directed to the abstract idea of managing electronic communications.

## B. The Asserted Patents' Claims Do Not Recite an "Inventive Concept" (*Alice* Step Two)

Step two of *Alice* asks whether the claims include an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." 573 U.S. at 221 (cleaned

up). Aside from the abstract idea of managing electronic communications, the representative claim (as with all other Asserted Claims) recites nothing more than generic components—i.e., a "network-based portal" and "electronic device[s]"—which cannot confer eligibility. *E.g.*, *Elec. Power Grp.*, 830 F.3d at 1355 ("The claims at issue do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,' but merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices." (citation omitted)). The Federal Circuit has instructed that the "network-based portal" can be anything "residing on the server side of the network" that "performs the communications management functionality," *IngenioShare*, 2025 WL 1189931, at *3–5, and the Asserted Patents' specification defines each "electronic device" as "any computing device having communication capabilities," '810 Patent at 8:13–17. "Such generic and functional hardware is insufficient to render eligible claims directed to an abstract idea." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020). Indeed, the patents make clear that the claimed invention is not meant to be limited to a specific structure. *E.g.*, '810 patent at 19:19–22 ("[T]he invention can be equally applied to or used in other different settings with respect to various combinations, embodiments, implementations or features provided in the description herein."), 19:64–67 ("[I]t is not desired to limit the invention to the exact construction and operation as illustrated and described. Hence, all suitable modifications and equivalents may be resorted to as falling within the scope of the invention.").

Plaintiff appears to argue that the Asserted Claims provide improvements over the prior art by "apply[ing] the user's preferences uniformly to all incoming communications, regardless of the channel over which they are received" and "allow[ing] users to identify the other communicating

party without revealing any contact or personal information." Complaint ¶¶20–21. These purported improvements merely restate the abstract ideas that are discussed above, and which the Federal Circuit has repeatedly held patent-ineligible. *E.g.*, *Capital One Bank (USA)*, 792 F.3d at 1369 ("customizing information based on ... information known about the user" is a patent-ineligible abstract idea); *Universal Secure Registry*, 10 F.4th at 1353 ("verifying the identity of a user" is a patent-ineligible abstract idea); *NetSoc*, 838 F. App'x at 548 (shielding user contact information while enabling a user to send a message is a patent-ineligible abstract idea). None of the functional steps recited in the claims—viewed individually or as an ordered combination— transform the claims into patent-eligible subject matter. *E.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (claimed sequence of steps comprised only "conventional steps, specified at a high level of generality," which was insufficient to supply an inventive concept (citation omitted)).

Plaintiff also appears to argue that the Asserted Claims addressed an "unmet need" to "efficiently manage multiple communication modes while uniformly applying a user's privacy, accessibility, and confidentiality preferences across those modes." Complaint ¶14. Even if true, the Federal Circuit's "precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *PersonalWeb*, 8 F.4th at 1319 (citing cases). In other words, it is irrelevant under *Alice* step two that the patents purport to "automate or otherwise make more efficient traditional ... methods" because this is, as a matter of law, not an "inventive concept." *Id.*; *Broadband iTV*, 113 F.4th at 1370 ("Automation of an abstract idea does not constitute an inventive concept."). Relatedly, the Federal Circuit has "held that improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer

functionality." *Customedia*, 951 F.3d at 1365. And to the extent Plaintiff relies on any purported "novelty" of the claimed subject matter, the Court "may assume that the techniques claimed are groundbreaking, innovative, or even brilliant, but that is not enough for eligibility." *SAP Am.*, 898 F.3d at 1163 (quotation omitted and cleaned up). Indeed, "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original).

Thus, there is nothing in the representative claim (or any other Asserted Claim) that constitutes a concrete implementation of the abstract idea or an otherwise inventive concept.

## C.  The Remaining Asserted Claims Fail to Correct the Deficiencies Identified for Representative Claim 1 of the '810 Patent

As shown in Exhibit A, the remaining asserted independent claims of the Asserted Patents (claim 11 of the '810 patent,[7] claim 46 of the '038 patent, and claim 1 of the '727 patent) are not meaningfully different from claim 1 of the '810 patent for purposes of the § 101 analysis. *See* Ex. A at 1–3 (comparing asserted independent claims). Thus, claim 1 of the '810 patent can be treated as representative.

In particular, the only additionally recited function is "receiving a second message from the second user to the first user…" ('727 patent, claim 1), which is, itself, abstract for the reasons discussed above. *E.g.*, *Two-Way Media*, 874 F.3d at 1337; *Intellectual Ventures I*, 792 F.3d at 1367. All other additional limitations recited in the remaining independent claims merely further define: (1) the nature of recited information (e.g., that the "contact information" includes a phone number or email address); (2) the nature of the recited communication options (e.g., text-, audio-, or image-based communications using a "personal computer" or "mobile phone"); or (3) the modes of communication that can be blocked (e.g., "the selected mode of communication"). These types

---

[7] Claim 11 of the '810 patent recites an apparatus for performing the method steps recited in claim 1 of the '810 patent.

of definitions are consistently found insufficient to transform an abstract idea into patentable subject matter. *E.g.*, *Elec. Power Grp.*, 830 F.3d at 1355 ("a large portion of the lengthy claims is devoted to enumerating types of information and information sources available … merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes").

The asserted dependent claims do not cure the problems described above, either. For example, although some recite steps of generating, receiving, and/or sending *additional* messages with or based on certain types of information—e.g., a "second" voice or text message ('038 patent, claim 58), a "predetermined message" ('038 patent, claims 59; '727 patent, claim 16), an "urgent notification" ('727 patent, claims 7–9), or a message with "availability" data ('727 patent, claim 15)—these are all "well-known, routine, and conventional functions [that] d[o] not transform the abstract idea into a patentable invention." *Affinity Labs*, 838 F.3d at 1264 (quotation omitted) (holding dependent claims abstract that "recite[d] functions that are not inventive but simply constitute particular choices from within the range of existing content or hardware, such as specifying that the regional broadcast is FM radio or video content"). The remaining limitations, once again, simply describe: (1) the nature of recited information (e.g., that the "contact information" includes a phone number or email address) ('038 patent, claim 58); (2) the modes of communication that can be used (e.g., one that is "different from the selected mode" and image- or audio-based) ('038 patent, claims 60, 61; '727 patent, claim 2, 3); or (3) the nature of the recited devices (e.g., a "personal computer" or "mobile phone") ('038 patent, claim 62; '727 patent, claims 6, 17). *See generally* Ex. A at 4–8.

At bottom, the asserted "dependent claims merely add trivial variations of the abstract idea" of managing electronic communications, and therefore "do not change the focus of the asserted

-19-

claims," *Trinity Info Media*, 72 F.4th at 1362, or supply an inventive concept. *directPacket Rsch.*, 2025 WL 1752247, at *4 (dependent claims did not offer limitations of "distinctive significance" for eligibility purposes where they "rely on the same fundamental methods of employing an intermediate protocol for translation asserted in the respective independent claims" (citation omitted)); *see also*, *e.g.*, *Elec. Power Grp.*, 830 F.3d at 1355.

## V. CONCLUSION

For the foregoing reasons, the Asserted Claims amount to nothing more than the abstract idea of managing electronic communications and are thus patent-ineligible under 35 U.S.C. § 101. Accordingly, Plaintiff fails to state a claim upon which relief can be granted and its Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: August 28, 2025

Respectfully submitted,

*/s/ Robert C. Van Arnam*

Robert C. Van Arnam, NC Bar No. 28838
Jenny J. Wang, NC Bar No. 61255
Carmelle F. Alipio, NC Bar No. 54738
Aaron T. Fadden, NC Bar No. 59495
**Williams Mullen, P.C.**
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Tel:    (919) 981-4055
Fax:    (919) 981-4300
Email: RVanArnam@williamsmullen.com
          JWang@williamsmullen.com
          CAlipio@williamsmullen.com
          AFadden@williamsmullen.com

*Local Civil Rule 83.1(d) Attorneys for*
*Defendant Epic Games, Inc.*

Christina J. McCullough
Antoine McNamara
Stevan R. Stark
Jessica J. Delacenserie
Jassiem Moore
**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, WA 98101
Tel:    (206) 359-8000
Fax:    (206) 359-9000
Email: CMcCullough@perkinscoie.com
          AMcNamara@perkinscoie.com
          SStark@perkinscoie.com
          JDelacenserie@perkinscoie.com
          JassiemMoore@perkinscoie.com

Makenzi Galvan
**Perkins Coie LLP**
2525 E. Camelback Road, Suite 500
Phoenix, AZ 85016
Tel:    (602) 351-8000
Fax:    (602) 648-7000
Email: MGalvan@perkinscoie.com

*Attorneys for Defendant Epic Games, Inc.*

-21-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2025, I caused the foregoing and all exhibits referenced therein to be electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification and electronic copy of such filing to all counsel of record in the above-captioned case.

*/s/ Robert C. Van Arnam*
Robert C. Van Arnam
*Local Civil Rule 83.1(d) Attorney for*
*Defendant Epic Games, Inc.*