# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| INGENIOSHARE, LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>EPIC GAMES, INC.,<br><br>      Defendant. | Civil Action No. 5:25-cv-385-M-BM<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF INGENIOSHARE, LLC'S OPPOSITION TO
DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

I.   The Prior Art's Technological Shortcomings ................................................... 2

II.  IngenioShare's Claimed Invention Is a Technical Solution to the Technological Problem in the Prior Art. ............................................................... 3

III. Epic Asserts that Multiple Claim Terms Must Be Construed in the Texas Proceeding. ...... 6

IV.  The Patent Trial and Appeal Board and Federal Circuit Both Recognized IngenioShare's Claimed Invention over the Prior Art. ...................................... 7

LEGAL ARGUMENT .......................................................................................................... 8

I.   Step One—Epic's Arguments Are Divorced From the Claims and the Detailed Specifications. ......................................................................................... 10

   A. IngenioShare's Claims Are Directed to a Specific Improvement to Computer-Network Capabilities. ....................................................................... 10

   B. Epic's Hypothetical "Receptionist" Is Not a Human Analogy for the Claimed "Network-Based Portal." ........................................................... 14

   C. *Enfish* and *SRI* Compel Denial of the Motion at Step One. ......................... 16

   D. Disputed Claim Construction Issues Necessitate Denial of Epic's Motion. ................. 18

II.  Step Two—Epic Mischaracterizes the Ordered Combination in the Claims to Ignore the Inventive Concept. .......................................................................... 19

   A. The Claimed "Network-Based Portal" Provides an "Inventive Concept." ................... 20

   B. The Claimed "Identifier"—Distinct from "Contact Information"—Obtained During the "Prior Registration Process" Is Inventive. ...................................................... 21

   C. The Ordered Combination Provides an "Inventive Concept." .......................... 24

III. Epic Incorrectly Asserts that a Single Claim is Representative of All the Claims. .......... 25

CONCLUSION ...................................................................................................................... 28

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)...................................................................... *passim*

*Ancora Techs., Inc. v. HTC America, Inc.*,
908 F.3d 1343 (Fed. Cir. 2018) ...........................................................................22

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)...........................................................................1, 9, 10, 22

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)....................................................................9, 10, 23, 24

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)...........................................................................10, 23

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)...........................................................................10, 24

*Contour IP Holding, LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024) ..........................................................................12

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018)...........................................................................13, 16

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018).............................................................................9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014)...........................................................14, 18, 19, 24

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)...................................................................... *passim*

*Epic Games, Inc. v. IngenioShare, LLC*,
Nos. 2023-2177, 2023-2178, 2023-2179, 2023-2180, 2025 WL 1189931 (Fed.
Cir. Apr. 24, 2025).............................................................................................8, 16

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019).............................................................................9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)...........................................................................9, 19, 20

Case 5:25-cv-00385-M-BM    Document 30    Filed 10/15/25    Page 3 of 33

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) ....................................................................................22, 23

*MyMail, Ltd. v. ooVoo*,
LLC, 934 F.3d 1373 (Fed. Cir. 2019) ...............................................................................10, 15

*Packet Intel. LLC v. NetScout Sys., Inc.*,
965 F.3d 1299 (Fed. Cir. 2020).....................................................................................9, 12, 22

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019)................................................................................... *passim*

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020).....................................................................................9

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017).....................................................................................10

**Statutes**

35 U.S.C. § 101..................................................................................................9, 10, 15, 21

**Rules**

Fed. R. Civ. P. 12 ..............................................................................................................10, 23

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 23, 24

**Other Authorities**

MPEP § 601.01 .....................................................................................................................19

# **INTRODUCTION**

IngenioShare's claims are directed to a concrete portal architecture for routing modern Internet communications—a "network-based portal" that employs a unique identifier for each user, distinct from the user's contact information, to manage and route multi-channel online communications while preserving user privacy and enforcing communication preferences. Under Rule 12, the allegations in IngenioShare's First Amended Complaint, accepted as true, compel denial of Epic's Motion under both *Alice* steps.

At step one, Epic improperly overgeneralizes the claimed invention in a way that untethers it from the claim language and the shared specifications. Like the claims upheld by the Federal Circuit in *Enfish* and *SRI*, IngenioShare's claims are "necessarily rooted in computer technology" and solve an Internet-specific problem in the realm of computer networks—i.e., unwanted communications across multiple modes and formats in an increasingly fragmented and proliferating Internet ecosystem. The claims have no direct human analog—and certainly are not analogous to Epic's hypothetical office "receptionist."

At step two, IngenioShare's claims contain multiple inventive elements that are arranged in an unconventional way, including at least: a "network-based portal" that uses a unique single "identifier" to route online communications across multiple channels while enforcing stored privacy and availability rules and withholding user "contact information." Both the Patent Trial and Appeal Board and the Federal Circuit found the claimed "network-based portal" at the centerpiece of all the claims to be a critical element missing from the prior art. As in *Bascom*, the claims here, in light of the specifications, provide an "inventive concept."

Epic's Motion also suffers from several procedural defects: it never meaningfully compares the claimed invention to the claims in its cited authority, fails to analyze the claims as a

1

whole, and ignores the dependent claims—each fatal at Rule 12(b)(6). Accordingly, the Court should deny Epic's Motion or, at a minimum, defer these disputes to claim construction.

<u>**STATEMENT OF FACTS**</u>

**I.      THE PRIOR ART'S TECHNOLOGICAL SHORTCOMINGS**

IngenioShare's patents claim priority to a provisional application filed on June 10, 2005. Dkt. 24-1 (U.S. Patent No. 10,142,810 ("the '810 Patent")) at 1:38-43. The claimed inventions address, among other things, an Internet-specific problem—unwanted communications across an ecosystem of proliferating and fragmented channels. Dkt. 24 (First Amended Complaint ("FAC")) ¶ 15; Dkt. 24-1 at 1:55-61, 3:43-58. To combat this technological problem, IngenioShare patented a concrete technical solution: a network-based portal that enables private, multi-channel electronic communication while shielding users' contact information. *See, e.g.,* FAC ¶¶ 15-22; Dkt. 24-1 at 1:55-61, 2:7-23, 3:43-58, 4:11-62, 5:22-52, 6:6-12, Figs. 2-5.

Prior to IngenioShare's claimed inventions, and as described in the shared specifications of the patents-in-suit, individual users often relied on multiple communication modes, including desk phones, fax machines, mobile phones, email, and instant messaging. FAC ¶ 9 (citing Dkt. 24-1 at 1:50-61). Those same users might have several different phone numbers and email addresses—leading to an already-persistent need to effectively manage a myriad of different communication channels. FAC ¶ 9 (citing Dkt. 24-1 at 1:50-61). This technical challenge was compounded by advancements in Internet and cellular network technologies in the 1990s, which unlocked multiple new communication devices, such as computers and mobile phones, in addition to conventional landline phones and fax machines, all of which operated as separate, non-integrated technologies over distinct and varying protocols. FAC ¶¶ 10-11. As a result, individual users were forced to maintain separate contact information unique to each mode of communication. FAC ¶ 12 (citing Dkt. 24-1 at 3:63-66).

2

This fragmented ecosystem created several significant challenges for managing electronic communications. FAC ¶ 12; Dkt. 24-1 at 1:55-61 ("There are people we like to communicate with, and there are those we prefer to avoid. Managing information from all such different modes can be quite time consuming. It should be apparent from the foregoing that there is still a need to help manage the numerous modes of communication."). Senders had to obtain, manage, and utilize multiple contact points to reach the recipient through different communication methods. FAC ¶ 12. Recipients had to remember and disclose separate contact information for each mode of communication—diminishing both privacy and confidentiality. *Id.* ¶ 13. For example, answering a call to a landline inherently discloses the recipient's location. *Id.* Additionally, recipients lacked the ability to consistently enforce their communication preferences—i.e., determining who may contact them, when, and under what circumstances—across different modes. *Id.* Preventing a sender from communicating with the recipient using one channel did not preclude that sender from communicating with the recipient through different channels. *Id.*

Accordingly, prior to the claimed invention, there was a significant unmet need for a way to efficiently manage multiple communication modes while uniformly applying a user's privacy, accessibility, and confidentiality preferences across those modes. *Id.* ¶ 14; Dkt. 24-1 at 1:55-61.

## II. INGENIOSHARE'S CLAIMED INVENTION IS A TECHNICAL SOLUTION TO THE TECHNOLOGICAL PROBLEM IN THE PRIOR ART.

IngenioShare's First Amended Complaint ("FAC") and the IngenioShare patents confirm "the focus of the claimed invention(s) is on a specific improvement to computer capabilities— i.e., the use of a ***network-based portal*** that employ[s] ***unique user identifiers***, distinct from contact information, to manage multi-channel electronic communications while preserving user privacy and enforcing communication preferences." FAC ¶ 23 (citing Dkt. 24-1 at 20:41-52 (Claim 1)) (emphases added); *see also* FAC ¶¶ 8, 15-30, 36, 42, 57, 72, 102.

3

The claimed inventions—supported by the specification—detail multiple important claim elements, including (1) the novel "network-based portal"; (2) a "prior registration process"; (3) a unique user "identifier" that does not disclose or rely upon a user's contact information—that the network-based portal uses to manage all communications with the user; and (4) sending messages to a receiver's electronic device without disclosing the receiver's contact information to the sender's electronic device. FAC ¶ 23. *See also, e.g.,* Dkt. 24-1 at Claim 1. Altogether, these technological achievements provide an integrated solution that uniformly manages multiple communication modes and channels in accordance with user-defined privacy, accessibility, and confidentiality preferences. *See, e.g.*, FAC ¶¶ 15-16 (citing Dkt. 24-1 at 3:43-58).

The factual record is replete with evidence that IngenioShare's claimed inventions are both unconventional and not abstract in multiple ways. To name just a few:

**First**, before initiating or receiving any communication via the network-based portal, a user must complete a "prior" registration process by providing contact information and communication preferences to the network-based portal to be stored in its database. *See, e.g.*, FAC ¶¶ 23, 26; Dkt. 24-1 at 5:60-62 ("a portal provides a number of intelligent communication modes (ICM) for the user to select as shown in FIG.1") and Fig. 1, 6:6-12 ("the user can define a number of contact classes," "define a number of statuses," and "set up an Access Priority Database for different ContactClasses") and Figs. 2-5. In turn, the network-based portal assigns a unique identifier to the user separate from and independent of the user's contact information. *See, e.g.*, FAC ¶ 25 (citing Dkt. 24-1 at 4:13-23, 5:33-36, Claim 1).

**Second**, once a user registers a unique user identifier with IngenioShare's invention, that identifier can facilitate multiple channels of communication (i.e., messages, voice calls, etc.) without requiring separate contact information for each channel. *See, e.g.*, FAC ¶ 20 (citing Dkt.

24-1 at 4:15-23). The invention streamlines the process of managing multiple contact points for a recipient, allowing the sender to conveniently access the network-based portal and select the desired mode of communication with recipients. *See, e.g.*, FAC ¶ 20 (citing Dkt. 24-1 at 2:7-10). For example, a sender may continue to place a cellular call to a recipient using the recipient's digital identity, even if the recipient's mobile phone number has changed. *See, e.g.,* FAC ¶ 20.

*Third*, user communications (i.e., messages, phone calls, fax transmission, e-mails, and/or images, etc.) are sent through the claimed network-based portal, rather than through a conventional cell network. *See, e.g.*, FAC ¶ 19. The claimed network-based portal serves as a neutral and independent intermediary, maintaining each user's privacy irrespective of whether the user initiates or receives a communication. *See* FAC ¶ 24 (citing Dkt. 24-5 (U.S. Patent No. 10,708,727) at 20:41-52). Importantly, communications facilitated by the network-based portal occur without ever disclosing the recipient's contact information to the sender, or vice versa. *See, e.g.*, FAC ¶¶ 20 (citing Dkt. 24-1 at 5:42-48), 22. *See also* Dkt. 24-1 at 2:20-23, 5:22-52. As highlighted in the shared specification: "After determining the identities, the system can establish connections between the caller and the user in real time. Though contacts are established, the system only needs to ensure the identities of the caller and the user to each other. However, the novel claimed system does not have to disclose the phone numbers, electronic addresses, physical locations and/or other attributes of the caller and the user to each other." FAC ¶ 27 (citing Dkt. 24-1 at 5:42-48).

*Fourth*, the network-based portal can consistently and/or uniformly enforce the user's communication preferences across all channels—such as by specifying who can contact the user, at what times, and under what circumstances. *See, e.g.*, FAC ¶¶ 17 (citing Dkt. 24-1 at 4:13-23, 5:33-36), 21 (citing Dkt. 24-1 at 4:25-26).

5

*Fifth*, the user can configure an access priority database within the network-based portal to govern the handling of incoming communications based on the user's status, the sender's priority level, the urgency of the message, and/or other metrics. *See, e.g.*, FAC ¶ 21 (citing Dkt. 24-1 at 4:25-38, 4:53-62).

## III. EPIC ASSERTS THAT MULTIPLE CLAIM TERMS MUST BE CONSTRUED IN THE TEXAS PROCEEDING.

On June 25, 2021, IngenioShare filed suit against Epic in the Western District of Texas (the "Texas proceeding"). During claim construction briefing in the Texas proceeding, Epic repeatedly argued that it was "necessary" for the Texas district court to construe multiple terms in the IngenioShare Patents, including at least the claimed "process," "availability," "text messaging," "text message," "indication," "multimedia messaging," "group messaging," "predetermined message," and "to provide an option" limitations.[1] Epic's Motion fails to

---

[1] *See* Ex. 1 (Epic's Texas Opening Claim Construction Brief) (emphases added throughout the following parentheticals) at 6 ("Construction of the term 'process' is ***necessary*** because a POSITA would not have understood the scope of the claimed 'process' with reasonable certainty."), 9 ("Construction of the term 'availability' is ***necessary*** because the patentee used the specific meaning of that term in the field of communications as a 'willingness to communicate.'"), 12 ("Construction of the terms 'text messaging' and 'text message' is ***necessary*** because the patentee did not use the term in a broad sense to refer to any and every kind of text-based communication."), 16 ("Thus, because the parties dispute 'the scope that should be encompassed by this claim language,' a 'determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning'' is 'inadequate.' As explained further below, the term 'indication' should be construed to mean 'information about a message that is not the message itself.'") (internal citations omitted), 18 ("Construction of the term 'multimedia messaging' is ***necessary*** because, as with the term 'text messaging' discussed above, the patentee did not use the term in a broad sense to refer to any and every communication using more than one medium or transmitting multimedia content."), 19 ("Construction of the term 'group messaging' is ***necessary*** because it is apparent from the patent and prosecution history that the inventor used the term differently from its plain and ordinary meaning."), 22 ("Construction of the term "predetermined message" is ***necessary*** because the patentee did not use the term to mean any kind of message that is predetermined, but rather a responsive message that is predetermined."), 24 ("Construction of this phrase 'to provide an option' is ***necessary*** to avoid violating the canon of construction that all the terms in a claim have meaning.").

6

substantively address all of these claim limitations or explain why they need not be construed now. *See generally* Mot.

## IV. THE PATENT TRIAL AND APPEAL BOARD AND FEDERAL CIRCUIT BOTH RECOGNIZED INGENIOSHARE'S CLAIMED INVENTION OVER THE PRIOR ART.

While the Texas proceeding was pending, Epic filed four IPR petitions challenging the IngenioShare patents. FAC ¶¶ 92-98. On May 19, 2023, the Patent Trial and Appeal Board ("Board") entered four Final Written Decisions upholding all claims of the IngenioShare patents. *Id.* ¶¶ 94, 97, 100-102. In all four decisions, the Board expressly found that the claimed "network-based portal"—which appears in all independent claims of the patents-in-suit—was both "central to the parties' respective positions" and not found in the prior art. *See, e.g.*, *id.* ¶ 101 (citing Dkt. 24-8 ('810 FWD) at 14, 36-37 ("The phrase 'network-based portal' is recited numerous times in each of the independent claims of the '810 patent, and its construction is central to the parties' respective positions regarding application of Petitioner's asserted prior art to the challenged claims.")). *See also* Dkt. 24-9 ('727 FWD) at 14, 38-39, 40; Dkt. 24-10 ('038 FWD) at 14, 34-35, Dkt. 24-11 (second '038 FWD) at 14, 35-36.

In confirming the patentability of all claims, the Patent Office assessed the parties' competing constructions for where the "network-based portal" resides (including testimony from both parties' expert) and ultimately agreed with IngenioShare that the claimed "network-based portal" "resid[es] at a server side of a network." Dkt. 24-8 at 12 ("Patent Owner retains compelling arguments for its proposed construction, supported by expert testimonial evidence, including dictionary definitions and the '810 patent specification's reference to a 'portal or a gateway.' . . . In light of these considerations, we construe 'network-based portal' as Patent Owner advocates, namely as residing on a server side of a network."). The Patent Office

expressly rejected Epic's argument that the claimed "network-based portal" broadly describes merely "a web page or interface that connects clients to a network." *Id.* at 7, 18-19.

Epic appealed the Board's decisions to the Federal Circuit. *Epic Games, Inc. v. IngenioShare, LLC*, Nos. 2023-2177, 2023-2178, 2023-2179, 2023-2180, 2025 WL 1189931, at *3 (Fed. Cir. Apr. 24, 2025). Epic's appeal was focused on where the claimed "network-based portal" resides—on the server-side of a network, the client-side of a network, or both. *Id.* ("On appeal, Epic challenges the Board's construction of 'network-based portal' as residing only on the server side of the network."). On April 24, 2025, the Federal Circuit affirmed the Board's determination that "Epic did not demonstrate that the claims are unpatentable as obvious." *Id.* at *5. In its decision, the Federal Circuit found that construing "network-based portal" to reside on the server side of a network was "not inconsistent with the claim language or specification," but did not issue an express construction for "network-based portal" beyond where it is located. *Id.*

## LEGAL ARGUMENT

Patent eligibility involves "a two-step analytical framework to identify patents that, in essence, claim nothing more than abstract ideas." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016). Courts first determine whether the claims are "directed to" an abstract idea and, if so, then determine whether the claims include an inventive concept that transforms the abstract idea into a "patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).

Step one focuses on "the claim's character as a whole." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019) (citation omitted); *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1312 (Fed. Cir. 2016). Courts must "consider the claim as a whole," which includes "read[ing] it in light of the specification." *Packet Intel. LLC v.*

*NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (citations omitted). The Federal Circuit has provided guidance for applying step one to software inventions: When the "focus of the claim[] is on the specific asserted improvement in computer capabilities" instead of "a process . . . for which computers are invoked merely as a tool," the claim is not abstract. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). Further, when a claim is directed to a "technological solution to a technological problem," it is not abstract. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019). Courts must avoid "describing the claims at such a high level of abstraction and untethered from the language of the claims," to ensure that the exceptions to Section 101 do not swallow the broad rule of patentability. *Enfish*, 822 F.3d at 1337. It is critical to "appreciate the functional improvement achieved" by the claimed invention. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018). If the claims are not "directed to" a patent-ineligible concept, then the claims are patent eligible, and the inquiry ends. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017).

Step two assesses whether the elements of all the claims—individually and as an ordered combination—provide an "inventive concept" that "transform[s] the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217-18, 221; *BASCOM*, 827 F.3d at 1350. Whether the claims contain an "inventive concept" or are instead "well-understood, routine and conventional to a skilled artisan" is a factual question. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018); *BASCOM*, 827 F.3d at 1349.

"Patent eligibility under § 101 is a question of law that may involve underlying questions of fact." *MyMail, Ltd. v. ooVoo*, LLC, 934 F.3d 1373, 1379 (Fed. Cir. 2019); *Berkheimer*, 881

9

F.3d at 1368. Thus, courts may not determine patent eligibility on a Rule 12 motion unless "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id*.; *Aatrix*, 882 F.3d at 1124-25 (reversing dismissal); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318-19 (Fed. Cir. 2019) (reversing dismissal).

## I. STEP ONE—EPIC'S ARGUMENTS ARE DIVORCED FROM THE CLAIMS AND THE DETAILED SPECIFICATIONS.

### A. IngenioShare's Claims Are Directed to a Specific Improvement to Computer-Network Capabilities.

IngenioShare's claims are directed to a specific improvement to computer-network capabilities—namely, a "network-based portal" that uses a single unique "identifier" for each user (distinct from contact information) to manage that user's communications across multiple channels through the "network-based portal," while preserving the user's privacy and enforcing the user's communication preferences. *See* Statement of Facts ("SOF") §§ I, II. IngenioShare's claims as a whole, read in light of the specification, detail "a specific means or method that improves the relevant technology"—i.e., solving the Internet-specific problem of unwanted communications across an ecosystem of proliferating and fragmented channels. *See* SOF § I.

Epic incorrectly asserts that the claims are merely "directed to the abstract idea of managing electronic communications." Mot. at 10. This mischaracterizes the claimed inventions by describing them at "a high level of abstraction [] untethered from the language of the claims"—exactly what the Federal Circuit cautioned against in *Enfish*. 822 F.3d at 1337. Like *Enfish*, IngenioShare's claims here are "not simply directed to *any* form of" managing electronic communications. 822 F.3d at 1335-37. The claims are instead "specifically directed to a" novel "network-based portal" architecture that uses a unique identifier for each user to uniformly manage multiple communication modes and channels in accordance with user-defined privacy, accessibility, and confidentiality preferences. *See* SOF § II. IngenioShare's claims are

10

"necessarily rooted in computer technology in order to solve a specific problem in the realm of computer networks," similar to claims upheld by the Federal Circuit in *Enfish* and *SRI*. *Enfish*, 822 F.3d at 1335-37 (upholding claims "not simply directed to **any** form of storing tabular data, but instead are specifically directed to a **self-referential** table for a computer database"); *SRI Int'l*, 930 F.3d at 1303 (upholding claims "directed to using a specific technique—using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors—to solve a technological problem arising in computer networks: identifying hackers or potential intruders into the network").

IngenioShare's claims require much more than general management of electronic communications. They require a "network-based portal" that must be "based on Internet protocol." *See, e.g.,* Dkt. 24-1 at Claim 1. They require presenting "a plurality of communication options to a first user" for selection. *Id.* There must be "a prior registration process" during which the first and second users provide their "contact information" to the "network-based portal" for multiple different modes of communication. *Id.* The "network-based portal" must create and assign a unique "identifier" to the second user. *Id.* That unique "identifier" must be "distinct from the contact information associated with the second user." *Id.* The unique "identifier" must support "all of the communication options" through the "network-based portal." *Id.* The "network-based portal" must permit "the second user to block the first user from reaching the second user via the network-based portal." *Id.* The "network-based portal" must be capable of storing information related to the user's blocking preferences in a "storage medium." *Id.* The "network-based portal" must also determine the "availability of the second user." *Id.* The "network-based portal" also prevents the second user's "contact information" from being "provided via the network-based portal to the first user." *Id.*

The claimed "network-based portal" is also the core of the claimed technological solution to the problems in the prior art—proliferating, non-integrated communication technologies (e.g., mobile/desktop telephony, fax, SMS, email, PC messaging) that use different formats and protocols, require different contact information (e.g., phone numbers, email and Internet addresses), and thereby compromise user privacy. *See* FAC ¶¶ 9-19. The claimed network-based portal addresses those problems by routing multiple forms of communication to a user based on the user's unique user identifier, without disclosing the user's contact information. That computer-centric architecture is a specific improvement to networked communications, not an abstract result. *See* FAC ¶¶ 5-13, 15-30; *Enfish*, 822 F.3d at 1336, 1338; *SRI Int'l*, 930 F.3d at 1303; *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) ("claims [that] recite a specific improvement over prior systems" are not abstract).

Epic's central response is to label the network-based portal a "generic computer component[]." Mot. at 17-19. That characterization disregards the claim language and the specification's detailed implementation of the network-based portal to improve and secure Internet communication. *See Contour IP Holding, LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (upholding claims providing "a specific means or method that improves the relevant technology"); *Packet Intelligence LLC v. NetScout Sys.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) ("we consider the claim as a whole [citation omitted], and read it in light of the specification, [citation omitted]"). The claims specifically teach ***how*** the "network-based portal" operates in a novel way—not simply functional results. Dkt. 24-1 at Claim 1.

The specifications also detail how these elements provide a technological solution to the problems in the prior art. *See* SOF §§ I-II.

12

Case 5:25-cv-00385-M-BM    Document 30    Filed 10/15/25    Page 16 of 33

Requiring the user to complete a "prior" registration process before initiating or receiving any communication via the network-based portal, helps the user protect their contact information and avoid unwanted communications. *See, e.g.*, FAC ¶¶ 23, 26; Dkt. 24-1 at 5:60-62 ("a portal provides a number of intelligent communication modes (ICM) for the user to select as shown in FIG.1") and Fig. 1; 6:6-12 ("the user can define a number of contact classes," "define a number of statuses," and "set up an Access Priority Database for different ContactClasses").

Assigning a unique identifier to the user—separate from and independent of the user's contact information—centralizes and allows control over multiple channels of communications through the "network-based portal." *See, e.g.*, FAC ¶¶ 20 (citing Dkt. 24-1 at 2:7-10, 4:15-23), 25 (citing Dkt. 24-1 at 4:13-23, 5:33-36, Claim 1). The network-based portal can consistently and/or uniformly enforce the user's communication preferences across all channels—such as by specifying who can contact the user, at what times, and under what circumstances. *See, e.g.*, FAC ¶¶ 17 (citing Dkt. 24-1 at 4:13-23, 5:33-36), 21 (citing Dkt. 24-1 at 4:25-26). Moreover, the user can configure an access priority database within the network-based portal to govern the handling of incoming communications based on the user's status, the sender's priority level, the urgency of the message, and/or other metrics. *See, e.g.*, FAC ¶ 21 (citing Dkt. 24-1 at 4:25-38, 4:53-62).

The claimed "network-based portal" also serves as a neutral and independent intermediary, maintaining each user's privacy irrespective of whether the user initiates or receives a communication. *See* FAC ¶¶ 20 (citing Dkt. 24-1 at 5:42-48), 22, 24 (citing Dkt. 24-5 (U.S. Patent No. 10,708,727) at 20:41-52; Dkt. 24-1 at 2:20-23, 5:22-52. "After determining the identities, the system can establish connections between the caller and the user in real time. Though contacts are established, the system only needs to ensure the identities of the caller and the user to each other. However, the novel claimed system does not have to disclose the phone

13

numbers, electronic addresses, physical locations and/or other attributes of the caller and the user to each other." FAC ¶ 27 (citing Dkt. 24-1 at 5:42-48).

Accordingly, the ***claimed*** network-based portal is not a generic portal, nor is it abstract.

## B. Epic's Hypothetical "Receptionist" Is Not a Human Analogy for the Claimed "Network-Based Portal."

Epic next devotes several pages of its Motion to incorrectly asserting that "a receptionist in an office building" is "directly analogous" to the claimed "network-based portal." Mot. at 11-14. Epic's "receptionist" analogy improperly abstracts away numerous claim elements—and even then fails to replicate, or otherwise achieve, the benefits of the claimed invention. FAC ¶¶ 31-38. "It is not enough, however, to merely trace the invention to some real-world analogy." *Data Engine*, 906 F.3d at 1011. Epic's analogy fails for at least eight independent reasons:

- **Internet-specific context.** The claimed "network-based portal" is "at least based on Internet protocol" in order to address the Internet-specific problem of unwanted communications across proliferating online channels. FAC ¶¶ 8, 15; *see* SOF § IV. While unwanted visitors exist in the real world, Epic's receptionist fails to account for "the ephemeral nature" of online communications from billions of nameless and faceless strangers over the Internet—"a problem that does not arise in the 'brick and mortar' context" of an office. *See DDR Holdings*, *LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) (rejecting purported "pre-Internet analog" of the claimed invention). Indeed, IngenioShare's specifications expressly detail how the rise of the Internet itself created the unique problem in the prior art. *See* SOF § I.

- **Neutral intermediary.** The "network-based portal" is a neutral entity separate from both users. FAC ¶ 32. By contrast, Epic's receptionist is ***only*** associated with—and acts on behalf of—the employee (the second user), rather than as an network intermediary independent of both the employee and the visitor (the first user). *Id*.

- **No disclosure of contact information.** A receptionist is part of the employee's disclosed contact information, and is visible to and shared with the visitor. *Id.* ¶ 33. The claimed "network-based portal," however, routes communications without disclosing any of the employee's contact information to the visitor. *Id.*

- **No cross-disclosure of contact information.** Epic admits the receptionist records and passes along the visitor's contact information so the employee can initiate contact. *Id.* ¶ 34. The claimed "network-based portal," by contrast, is prohibited from disclosing the visitor's contact information to the employee. *Id.*

- **Registration gatekeeping.** A receptionist may ask visitors to sign in, but that is not equivalent to the claimed "prior registration" process, which blocks any communication between the users until registration is completed. *Id.* ¶ 35.

- **Single identifier.** The claimed "network-based portal" issues and uses a single identifier for all modes of communication between users. *Id.* ¶ 36. Epic concedes the receptionist does not. *Id.* In practice, the receptionist relies on multiple ad hoc identifiers (e.g., handwritten notes, room escorts, etc.), not one cross-modal identifier. *Id.*

- **Direct, two-way delivery.** The claimed "network-based portal" enables direct message delivery between users through the network layer. *Id.* ¶ 37. A receptionist merely takes messages or diverts to voicemail, leaving the visitor without a means to directly initiate communication through a unified system. *Id.*

- **Multi-modal, protocol-agnostic operation.** Epic's receptionist allegedly handles at most two modes (in-person and phone). *See* Mot. at 12. Moreover, the receptionist cannot route across heterogeneous protocols, enforce blocking/availability rules, or operate with a single identifier across voice and text, unlike the claimed "network-based portal." *See, e.g.,* FAC ¶ 57.

### C. *Enfish* and *SRI* Compel Denial of the Motion at Step One.

Epic's Motion sidesteps controlling Federal Circuit guidance from *Enfish* and *SRI*—decisions upholding eligibility where claims recite specific improvements to computer database or network operations. *See Enfish*, 822 F.3d at 1335-37 ("For each column, store information about that column in one or more rows, rendering the table self-referential"); *SRI Int'l*, 930 F.3d at 1303 ("detecting, by the network monitors, suspicious network activity based on analysis of network traffic data selected from one or more of the following categories: {network packet data transfer commands, network packet data transfer errors, network packet data volume, network connection requests, network connection denials, error codes included in a network packet, network connection acknowledgements, and network packets indicative of well-known network-service protocols}; generating, by the monitors, reports of said suspicious activity; and automatically receiving and integrating the reports of suspicious activity, by one or more hierarchical monitors"). Indeed, the Motion does not cite them at all. *See generally* Mot. Each underscores why dismissal is improper here.

The seminal *Enfish* case instructs that the § 101 analysis turns on claim-specific comparisons and not high-level technology summaries. 822 F.3d at 1334 (holding "both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."). Epic never performs this comparison. Rather than set IngenioShare's claim language against the claims in its cited cases (e.g., *Two-Way Media*, *NetSoc*), Epic offers only high-level description and soundbites—precisely what *Enfish* forbids. *See id.* at 1336 ("However, describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

Like *Enfish*, which upheld claims specifying a concrete data-structure operation, 822 F.3d at 1335-37 ("[f]or each column, store information about that column in one or more rows, rendering the table self-referential"), IngenioShare's claims likewise recite what is stored and how it drives system behavior. Here, the claims require "a prior registration process" that "creat[es] . . . one identifier associated with the second user," and then mandates that "all of the communication options use one identifier associated with the second user" for delivery; it further "determin[es] availability," "permit[s] the second user to block" unwanted communications, and enforces that "contact information . . . is not provided" and that "the one identifier . . . is distinct from the contact information." *See, e.g.,* FAC ¶¶ 30-36, 42; Dkt. 24-1 at Claim 1.

Similar to *SRI*, which upheld claims that teach a concrete network architecture, IngenioShare's claims here likewise specify network-layer control. *Compare* 930 F.3d at 1303 ("deploying a plurality of network monitors," "detecting . . . suspicious network activity" from specified traffic categories, "generating . . . reports," and "automatically . . . integrating the reports . . . by one or more hierarchical monitors") *with* Dkt. 24-1 at Claim 1 (reciting a "network-based portal" for "receiving an indication" of "the selected option of communication," "enabling" the "message to be received" "using the selected option" based on the "one identifier," "permitting the second user to block," and "determining availability," all while the user's "contact information" "is not provided" to "the first user").

Even for the cases cited in its Motion, Epic never performs the claim-to-claim comparison that *Enfish* requires. *See* 822 F.3d at 1334. For example, Epic invokes *Two-Way Media* and *NetSoc*, but does not analyze the actual claim language against the claims here. *See* Mot. at 2, 14-15. Because Epic has not carried its burden, the Motion should be denied. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1291 (Fed. Cir. 2024) ("The burden to prove

the ineligibility of any patent claim stays with the patent challenger at all times."). Instead, Epic resorts to erecting five strawman "functions" in its Motion. Mot. at 11. Epic's five functions ignore several key claim terms that provide "how" the results are achieved. As stated, the combination of the claimed "prior registration process," "network-based portal," "identifier" and "no contact information" as a whole claim and describe how the claimed system operates. Epic's failure to address these key claim terms reveals Epic's attempt to describe the "claims at such a high level of abstraction and untethered from the language of the claims [that it] all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337. As in *Enfish*, this Court should reject Epic's untethered argument. *Id.*

### D. Disputed Claim Construction Issues Necessitate Denial of Epic's Motion.

At the pleadings stage, courts do not resolve eligibility where material claim construction disputes bear on the § 101 analysis. IngenioShare's proposed constructions must be adopted, or else the parties' claim construction disputes must be resolved. *Aatrix*, 882 F.3d at 1125; *MyMail,* 934 F.3d at 1379 (vacating and remanding based on district court's error declining to resolve the parties' claim construction dispute before adjudging patent eligibility).

As detailed above, Epic's Motion depends on reducing the claimed "network-based portal" to a generic computer component. *See* Mot. at 17-19. This argument fails for at least two reasons. First, taken as a whole, the claims recite an integrated solution that uniformly manages multiple communication modes and channels in accordance with user-defined privacy, accessibility, and confidentiality preferences. That is a computer-centric improvement—not a results-oriented aspiration. *See, e.g., Enfish*, 822 F.3d at 1336-39 (claims directed to a specific data structure found eligible); *Core Wireless*, 880 F.3d at 1362-64 (improved user interface found eligible). Second, the term "network-based portal" has not been construed by this Court—and it has only been partially construed by the Board with respect to only its location. Dkt. 24-8 at 12

("Patent Owner retains compelling arguments for its proposed construction, supported by expert testimonial evidence, including dictionary definitions and the '810 patent specification's reference to a 'portal or a gateway.' . . . In light of these considerations, we construe 'network-based portal' as Patent Owner advocates, namely as residing on a server side of a network.").

Contrary to Epic's statements, the Federal Circuit also did not construe "network-based portal." *See* SOF § IV. The sole focus of Epic's appeal was on ***where*** that portal resides. *Id.* That was the issue reviewed and decided by the Federal Circuit. *Epic Games*, 2025 WL 1189931, at *5 ("We ***affirm*** the Board's claim construction that a 'network-based portal' resides on the server side of a network."). Neither the Federal Circuit nor the Board expressly construed "network-based portal" beyond where it is located in the architecture, and Epic's Motion cannot be granted absent substantive claim construction. *Id.*

## II.     STEP TWO—EPIC MISCHARACTERIZES THE ORDERED COMBINATION IN THE CLAIMS TO IGNORE THE INVENTIVE CONCEPT.

The Court need not reach step two because step one resolves eligibility. *Packet Intel.*, 965 F.3d at 1310 (citations omitted). If the Court nevertheless considers step two, the key question is whether the claims contain an "inventive concept"—i.e., more than "well-understood, routine, conventional activities previously known in the industry." *Alice*, 573 U.S. 208, 225 (2014) (quotation marks and alteration omitted). Whether the claims are "inventive" or instead "well-understood, routine and conventional to a skilled artisan in the relevant field" is a factual question. *See Berkheimer*, 881 F.3d at 1369; *Aatrix*, 882 F.3d at 1127. The "inventive concept" may arise from individual claim elements or the ordered combination of those elements. *BASCOM*, 827 F.3d at 1349.

IngenioShare's claims provide numerous inventive claim elements that, individually and as an ordered combination, provide the requisite "inventive concept"—including the claimed

"network-based portal," the claimed unique user "identifier" obtained during the "prior registration process," and that "no contact information is provided" to other users. Indeed, the Board expressly and repeatedly found the claimed "network-based portal" to be a critical claim element missing from the prior art—and the Federal Circuit affirmed all four of the Board's decisions. *See* SOF § IV. Pursuant to *Bascom*, IngenioShare's claims, in light of the specifications, provide an "inventive concept." *BASCOM*, 827 F.3d at 1349.

### A. The Claimed "Network-Based Portal" Provides an "Inventive Concept."

The Board identified the claimed "network-based portal"—which appears in all of the challenged claims—as "central to the parties' respective positions" and not found in the prior art; the Federal Circuit affirmed. *See* SOF § IV; Dkt. 24-8 at 14 ("The phrase 'network-based portal' is recited numerous times in each of the independent claims of the '810 patent, and its construction is central to the parties' respective positions regarding application of Petitioner's asserted prior art to the challenged claims."), 36-37 ("Petitioner does not show that Diacakis discloses a 'network-based portal' as so construed . . . ."), 38 ("Under our adopted construction, Petitioner does not show that the combination of Tanigawa and Hullfish meets the claim requirements of a 'network-based portal.'"); Dkt. 24-9 at 14, 38-39, 40 (same finding); Dkt. 24-10 at 14, 34-35 (same finding), Dkt. 24-11 at 14, 35-36 (same finding).

The intrinsic record also establishes that the claimed "network-based portal" provides an inventive concept. The pleadings and intrinsic evidence allege—and the Board and Federal Circuit corroborate—that the claimed "network-based portal" is not present in the prior art. SOF § IV. It is a central feature that allows the claimed architecture to function by invoking and connecting the other claimed features, including (i) collecting and associating a user's contact information for each supported communication mode; (ii) creating and assigning a single portal-issued identifier to that user; and (iii) storing and enforcing rules/settings (e.g., access priorities,

blocking/availability) before any communication may occur. *See* SOF §§ I-II; FAC ¶¶ 10-14, 25-28, 35. On such a record, step-two dismissal is improper. *See Berkheimer*, 881 F.3d at 1369; *Aatrix*, 882 F.3d at 1127; *BASCOM*, 827 F.3d at 1352 (reversing Rule 12(b)(6) where "nothing on this record" refuted non-conventionality).

Epic contends that its strawman "receptionist" is analogous to the "network-based portal." Mot. at 6. As discussed above, it is not. *See* Legal Argument § I.C. Moreover, even in Epic's hypothetical, its "visitor" has already initiated a mode of contact (in-person—address disclosed; or phone—number disclosed) before any sign-in. *Id.* The claims require the opposite ordering: registration occurs prior to initiation of any communication, because it is during registration that the identifier is created, modes/preferences are set, and the portal is authorized to act. FAC ¶¶ 25-28, 35. Absent the "prior registration process," the portal will not allow message delivery. FAC ¶ 35. A human receptionist neither issues a single cross-modal identifier nor implements protocol-agnostic, database-driven rules at a network intermediary.

Accordingly, taking IngenioShare's allegations and the intrinsic record as true, the claimed "network-based portal" is a novel, computer-implemented mechanism that enables multi-channel electronic communications while preserving user privacy and enforcing communication preferences. *See* SOF §§ I-II; FAC ¶¶ 10-14, 25-28, 35.

**B.     The Claimed "Identifier"—Distinct from "Contact Information"—Obtained During the "Prior Registration Process" Is Inventive.**

IngenioShare's claims recite a unique "identifier" specific to each user—created during the "prior registration process"—that the "network-based portal" uses to route all supported modes of communication (e.g., text and voice) while withholding all of the user's contact information. *See* FAC ¶¶ 10-13, 22, 26-29, 35; Dkt. 24-1 at 1:67-2:7 ("In one embodiment, an apparatus, using at least a network-based portal based on Internet protocol, could provide a

number of communication options to a first user, with all the options using an identifier associated with a second user for the second user to receive messages via an electronic device associated with the second user, the options including text messaging, voice communication, multimedia messaging, and group messaging."). Accordingly, the claimed unique user "identifier" provides a single control point for delivering network communications while preserving the user's privacy across different, fragmented communication protocols—a solution "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *See DDR Holdings*, 773 F.3d at 1257.

Epic's allegation that assigning "unique identifiers" is just "necessary antecedent and subsequent components," Mot. at 13, is divorced from the claims and the specifications—which confirm the identifier's central role at every stage of the claimed operation. FAC ¶¶ 22, 26-29, 35. The claimed "identifier" allows all the various modes of communication to go through the network-based portal while ensuring that the claimed "contact information" remains confidential. *Id.* Indeed, creating an "identifier" that allows all communications to go through the network-based portal—regardless of whether the communication mode is a cell phone call, a desktop phone, text message, fax communication, email, image, etc.—adds specificity to the claim that "transform[s] a claim from one claiming only a result to one claiming a way of achieving it." *See Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1349 (Fed. Cir. 2018) (upholding eligibility and explaining that "[i]mproving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem"). Moreover, the claimed "identifier" is part of the title of all three of IngenioShare's patents, which by rule is required to set forth an accurate description of the claimed invention, not antecedent

and subsequent components of the claimed invention. *See* MPEP § 601.01 ("Title of the Invention").

Epic's footnoted attempt to compare the unique "identifier" to an employee ID number or badge, is likewise inapt. Mot. at 13, n.8. Neither enables the employee to send or receive a text message or a voice call with the visitor, nor does Epic explain how it could serve as a single handle for both modalities without exposing the employee's contact information. By contrast, the claimed "identifier"—issued through the network-based portal, unique to each user, and used across text and voice—provides a single control point for cross-modal delivery while preserving privacy. *See* FAC ¶¶ 10-14, 26-29.

Epic's piecemeal challenge fails to assess IngenioShare's claims as a whole. *See McRO*, 837 F.3d at 1312, 1316. Even if Epic were correct that "contact information" is data in the abstract (it is not), the claimed operation that withholds it at delivery time—while permitting the message to go through—recites a specific network behavior implemented by the portal. Epic's "receptionist" analogy confirms the point: Epic asserts that an in-person visit or a patched phone call "does not require the disclosure of any contact information." Mot. at 12-13. But arriving at an office requires an address, and placing a call requires a telephone number—both "contact information" by Epic's own admission. *Id.* at 23. The analogy thus discloses contact information where IngenioShare's claim expressly forbids it.

Moreover, the claims expressly require that "the contact information . . . is not provided . . . to the first user," while still enabling delivery "using the selected option of communication, based on the one identifier." *See* FAC ¶¶ 13-14, 26-29, 35; Dkt. 24-1 at Claim 1. As part of the claimed network architecture, that limitation describes how the system operates at the network layer to preserve confidentiality—the portal transmits communications without exposing

Case 5:25-cv-00385-M-BM    Document 30    Filed 10/15/25    Page 27 of 33

"contact information" (e.g., phone numbers, e-mail addresses, or network addresses) to counterparties. That is a computer-network privacy control, not a "type of information." *See DDR Holdings*, 773 F.3d at 1257 (patent-eligible "solution is necessarily rooted in computer technology"); *cf. McRO*, 837 F.3d at 1313 ("The specific, claimed features of these rules allow for the improvement realized by the invention."). Accordingly, the claimed "identifier" is not abstract. *See* FAC ¶¶ 15-30.

C.      The Ordered Combination Provides an "Inventive Concept."

Epic's Motion offers only attorney argument and no *prima facie* evidence that the asserted limitations are conventional. *See generally* Mot. In particular, Epic resorts to mischaracterizing the ordered combination in the claims—asserting that all of the claims "recite[] nothing more than generic components . . . which cannot confer eligibility." Mot. at 19 (identifying briefly only the "network-based portal" and "electronic device[s]" elements). In reaching this conclusion, Epic fails to address the ordered combination in the claims, i.e., the arrangement of **all** claim elements. *Bascom*, 827 F.3d at 1349 (holding that courts must "consider the elements of each claim both individually and 'as an ordered combination'"). This is insufficient at Rule 12. *See Mobile Acuity*, 110 F.4th at 1291 ("The burden to prove the ineligibility of any patent claim stays with the patent challenger at all times.").

In *BASCOM*, the Federal Circuit assessed whether a patent directed to "filtering content on the Internet" was eligible for patenting. 827 F.3d at 1348. The Federal Circuit reversed the district court's decision under step two, holding that, although "the limitations of the claims, taken individually, recite generic computer, network, and Internet components," the "inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Id.* at 1349-50. In particular, the Federal Circuit found an "inventive concept" in the combination of (a) "installation of a filtering tool at a specific location," (b) "remote from the

end-users," (c) "with customizable filtering features specific to each end user." *Id.* at 1350. In reaching its decision, the Federal Circuit highlighted key statements from the specification about the invention's advantages over prior art systems. *Id.*

As in *BASCOM*, IngenioShare's inventive concept here—confirmed by the specifications—lies in where functionality resides and how it is arranged: (i) a "network-based portal" that routes across multiple communication channels (ii) using a registration-issued unique single identifier that enforces stored privacy/availability rules while withholding "contact information"—a non-conventional ordering of components and functions. *See* SOF § II. When the limitations are taken together as an ordered combination, the claims recite more than routine Internet use. *See DDR Holdings*, 773 F.3d at 1257; *BASCOM*, 827 F.3d at 1349.

At a minimum, IngenioShare's well-pled allegations create a material fact dispute as to what is "well-understood, routine and conventional to a skilled artisan" that cannot be resolved on the pleadings. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318-19 (Fed. Cir. 2019) ("We have no basis, at the pleadings stage, to say that these claimed techniques, among others, were well-known or conventional as a matter of law."); *Aatrix*, 882 F.3d at 1127-28 ("Viewed in favor of [the plaintiff], as the district court must at the Rule 12(b)(6) stage, the complaint alleges that the claimed combination improves the functioning and operation of the computer itself."). Epic's Motion should be denied.

### III. EPIC INCORRECTLY ASSERTS THAT A SINGLE CLAIM IS REPRESENTATIVE OF ALL THE CLAIMS.

Epic's Motion should be independently denied, because it relies on a flawed assertion that Claim 1 of the '810 Patent is representative of all the claims. *See* Mot. at 22. In particular, U.S. Patent No. 10,708,727 ("the '727 Patent") recites claims requiring the "network-based portal" to "provide an option to the second user to keep the contact information associated with the second

user confidential from the first user, and to provide an option to the first user to keep the contact information associated with the first user confidential from the second user" and further that the "network-based portal" receive an "indication from the second user for the first user via the network-based portal to generate an urgent notification for the first user; and enabling the urgent notification to be generated to notify the first user at least in view of receiving the indication." *See, e.g.,* Dkt. 24-5 at Claims 1, 7. Likewise, U.S. Patent No. 10,492,038 ("the '038 Patent") recites claims requiring that the "network-based portal" be capable of providing "a predetermined message to send to the first user" wherein that message is "selected from a set of predetermined messages provided to the second user." *See, e.g.,* Dkt. 24-3 at Claims 37, 42, 45, 56, 59, and 67.

Epic's failure to analyze the dependent claims is also fatal to its Motion. *See* Mot. at 22-23 (asserting only that the "dependent claims merely add trivial variations of the abstract idea"). It is black letter law that every claim element in all the claims must be substantively considered. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (The claims must be "considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.").

Other dependent claims add several concrete limitations that are inventive and not abstract—including using a single identifier for various forms of communication, "the options including text messaging, voice communication, multimedia messaging, and group messaging." *See, e.g.,* Dkt. 24-1 at 2:5-7, Claims 2, 3, 12, 13, and 19. Each one of these communication modes were unique technologies that employed different networks, different protocols, and further required unique contact information. FAC ¶¶ 9-14. IngenioShare's invention, however, runs the different communications modes through the Internet using a single identifier for each

communication mode. *Id.* ¶¶ 15-22; Dkt. 24-1 at 2:5-7 ("all the options using an identifier associated with a second user for the second user to receive messages via an electronic device associated with the second user"). Using a single identifier for multiple modes of communication over the Internet, while maintaining privacy, is inventive and non-abstract.

Epic's argument that the "dependent claims merely add trivial variations of the abstract idea" is false. *See* Mot. at 23. None of the above limitations are about "generating, receiving, and/or sending *additional* messages" or describing "the nature of recited information," "the modes of communication that can be used," or "the nature of the recited devices." *See* Mot. at 23 (emphasis in original). Rather, they describe novel, fundamental, and materially different aspects of how the "network-based portal" functions.

Moreover, Epic's flawed assertion of representativeness is contradicted by Epic's own Markman briefing in the prior Texas proceeding. *See* Ex. 1. There, Epic argued that it was necessary to undertake claim construction for the claimed "multimedia messaging" ('810 Patent, Claims 2, 12, and 19) and "group messaging" ('810 Patent, Claims 3, 13, and 19) limitations. *See id.* at 18 ("Construction of the term 'multimedia messaging' is ***necessary*** because, as with the term 'text messaging' discussed above, the patentee did not use the term in a broad sense to refer to any and every communication using more than one medium or transmitting multimedia content.") (emphasis added), 19 ("Construction of the term 'group messaging' is ***necessary***" because it is apparent from the patent and prosecution history that the inventor used the term differently from its plain and ordinary meaning.") (emphasis added). Epic cannot now reverse course and claim that these terms are immaterial.

# **CONCLUSION**

For the foregoing reasons, Plaintiff IngenioShare respectfully requests that the Court deny Epic's Motion.

Dated: October 15, 2025

Respectfully submitted,

*/s/ Peter D. Siddoway*

Peter D. Siddoway
SAGE PATENT GROUP
2301 Sugar Bush Road, Suite 200
Raleigh, NC 27612
Telephone: 984-219-3369
Email: psiddoway@sagepat.com
NC Bar No. 45647
Local Civil Rule 83.1(d) Attorney for
IngenioShare, LLC

Stephen R. Risley
Email: steverisley@kentrisley.com
Telephone: (404) 585-2101
Daniel A. Kent
Email: dankent@kentrisley.com
Telephone: 404-585-4214
KENT & RISLEY LLC
5755 North Point Parkway, Suite 57
Alpharetta, GA 30022

***Counsel for Plaintiff IngenioShare, LLC***

<strong><u>CERTIFICATE OF SERVICE</u></strong>

I hereby certify that on October 15, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will give notice of such filing to all counsel currently of record in the above-captioned case.

*/s/ Peter D. Siddoway*

Peter D. Siddoway
SAGE PATENT GROUP
2301 Sugar Bush Road, Suite 200
Raleigh, NC 27612
Telephone: 984-219-3369
Email: psiddoway@sagepat.com
NC Bar No. 45647
Local Civil Rule 83.1(d) Attorney for
IngenioShare, LLC

Stephen R. Risley
Email: steverisley@kentrisley.com
Telephone: (404) 585-2101
Daniel A. Kent
Email: dankent@kentrisley.com
Telephone: 404-585-4214
KENT & RISLEY LLC
5755 North Point Parkway, Suite 57
Alpharetta, GA 30022

***Counsel for Plaintiff IngenioShare, LLC***