IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:25-cv-00385

|  |  |
|---|---|
| INGENIOSHARE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>Defendant. | ORDER |

This matter is before the court on Epic Games, Inc.'s ("Epic" or "Defendant") motion to dismiss [DE 25] claims of infringement of U.S. Patent Nos. 10,142,810 ("the '810 Patent"), 10,492,038 ("the '038 Patent"), and 10,708,727 ("the '727 Patent"). IngenioShare, LLC ("IngenioShare" or "Plaintiff") has filed a response in opposition [DE 30], and Epic has filed a reply [DE 31]. The motion is ripe. The court finds that '810 Claim 1 is invalid because it is ineligible under 35 U.S.C. § 101. The court finds that because the '810 Claim 1 is representative of all remaining claims for § 101 purposes, the remaining claims of the '810, '038, and '727 patents are also invalid. Finally, the court determines that no claim construction is needed. Thus, the motion [DE 25] is granted.

## I. Procedural Background

On June 25, 2021, IngenioShare filed an action against Epic in the Western District of Texas alleging infringement of the '810 patent, '038 patent, and '727 patent, as well as a fourth patent not asserted in this action. *IngenioShare, LLC v. Epic Games, Inc.*, No. W-21-CV-00663-ADA, 2022 WL 827808, at *1 (W.D. Tex. Mar. 18, 2022). The Texas action was dismissed for improper venue. *Id.* at *4. While the Texas action was pending, Epic filed petitions for Inter Partes Review ("IPR") of the Asserted Patents[1] before the U.S. Patent Trial and Appeal Board (the "Board"). *Epic Games, Inc. v. IngenioShare, LLC*, No. 2023-2177, 2025 WL 1189931, at *1 (Fed. Cir. Apr. 24, 2025) (nonprecedential) (unpublished). The Board instituted review and found that Epic failed to demonstrate that the challenged claims were obvious over the cited prior art. *Id.* The Federal Circuit affirmed. *Id.*

Shortly after, IngenioShare initiated this suit on July 2, 2025. [DE 1]. On August 8, 2025, Epic filed a motion to dismiss. [DE 19]. IngenioShare filed an amended complaint on September 18, 2025, [DE 24] (the operative pleading), and the court denied the previous motion to dismiss [DE 19] as moot [DE 27]. IngenioShare asserts Epic infringed claims 1 and 11 of the '810 patent; claims 46 and 58–62 of the '038 patent; and claims 1–3, 6–9, and 15–17 of the '727 patent (collectively, "the Asserted Claims") under 35 U.S.C. § 271. *See* [DE 24] ¶¶ 108, 125, 131, 148, 154, 169. On September 25, 2025, Epic filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) [DE 25] and a memorandum in support [DE 26]. Epic argues the

---

[1] The Board instituted review for claims 1–20 of the '810 Patent, *Epic Games, Inc. v. IngenioShare, LLC*, No. IPR2022-00202, Paper No. 29, at 3 (P.T.A.B. May 19, 2023) (herein after "*Epic IPR*"), claims 7–12, 22–24, and 33–67 of the '038 Patent, *Epic Games, Inc. v. IngenioShare, LLC*, IPR2022-00294, Paper 30 at 3 (P.T.A.B. May 19, 2023) ('038 Patent); *Epic Games, Inc. v. IngenioShare, LLC*, IPR2022-00295, Paper 27, at 3 (P.T.A.B. May 19, 2023) ('038 Patent), and claims 1–9 and 15–17 of the '727 Patent, *Epic Games, Inc. v. IngenioShare, LLC*, IPR2022-00291, Paper 30, at 3 (P.T.A.B May 19, 2023) ('727 Patent).

2

asserted claims are ineligible for patent protection under 35 U.S.C. § 101. IngenioShare filed a response [DE 30], and Epic filed a reply [DE 31]. The motion is ripe.

## II. Background

IngenioShare is the owner, by assignment, of the '810, '038, and '727 Patents (collectively, the "Asserted Patents"). *See* [DE 24] ¶¶ 40, 55, 70. The patents in suit are related as a series of continuation applications and share substantially the same specification. *See* '727 Patent at [63]; 1:10–57. The Asserted Patents claim priority to a provisional application filed June 10, 2005. [DE 30] 6 (citing '810 Patent 1:38–43). The Asserted Patents claim to resolve a problem in the prior art: The "way that others can send us information have increased significantly" such that "there is still a need to help manage numerous modes of communication." '810 Patent 1:49–50, 59–61. "Just to list a few different modes of communication, we can be reached from standard desk phones, fax, cell phones, electronic mails, and instant messages." *Id.* at 1:50–53. The Asserted Patents explain that users have preferences or restrictions with whom to communicate. *Id.* at 1:55–56. The cost of these different modes of communication is that "[m]anaging information from all such different modes can be quite time consuming." *Id.* at 1:56–58.

Figure 6 depicts an overview of a "communication system according to one embodiment of the invention." *Id*. at 3:18–19.



IngenioShare's invention depends on, or leverages [DE 24] ¶ 18, "different modes of communication converging onto the internet protocol platform. A communication gateway or a portal is formed allowing [a] user to receive [and control] communications from numerous sources through different modes." '810 Patent 4:11–15; *see also id*. at 4:39–41; *id*. at fig. 1. The portal may be based on the web or an ISP. *Id*. at 4:24–25, 5:51–52, 6:22–23. The portal uses an "identifier" to facilitate different modes of communication. *See id*. at 4:15–23. A user's digital identity can be based on a user's access identifier for the different communication addresses from different communication modes. *See id*. at 4:16–20. In addition to the user's email address, a user's access identifier can be "the user's other types of identification, such as the user's driver licenser number." *Id*. at 4:21–23. The system digitally identifies the identities of a first user (the

4

caller) and second user (the receiver). *See id.* at 5:34–36. After determining the identities, the system can establish contacts between the users but does not need to disclose the phone numbers or electronic addresses of the users to each other. *See id.* at 5:42–48. The portal can execute communication management functions. *See id.* at 4:25–38 (status indicator portal functionality); *id.* at 4:39–41 (controlling selection of communication mode), 5:60–62; *id.* at 6:6–12; *id.* at fig. 2 (embodiment defining contact classes); *id.* at fig. 3 (embodiment setting up urgency classes); *id.* at fig. 4 (embodiment defining a number of statuses); *id.* at fig. 5 (embodiment setting up access priority database). The Asserted Claims are directed to "functionality for managing electronic communications, including providing communication options to a user, selecting different communication modes or options, sending and receiving messages, and allowing a user to block communications and control the sharing of contact information." *Epic*, 2025 WL 1189931, at *1.[2]

'810 Claim 1 is an independent method claim, which recites:

> A computer-implemented method for managing electronic communications using at least a network-based portal at least based on Internet protocol, the method comprising:
>
> providing a plurality of communication options to a first user to be selected as a selected option of communication for a message from the first user to a second user via an electronic device associated with the second user, with the first user being identified at least depending on a prior registration process by the first user regarding the use of the network-based portal, and with the plurality of communication options provided to the first user to send messages to the electronic device associated with the second user,
>
> > wherein the plurality of communication options include text messaging and voice communication, and
> >
> > wherein all of the communication options use one identifier associated with the second user for the second user to receive messages, at least in view of the network-based portal being based on the Internet protocol;

---

[2] Although under different circumstances, the court finds the Federal Circuit's description appropriate for this motion.

receiving an indication regarding one of the plurality of communication options, via the network-based portal, from an electronic device associated with the first user, the indication indicating the selected option of communication for the message from the plurality of communication options provided;

permitting the second user to block the first user from reaching the second user via the network-based portal; and

enabling, via the network-based portal, the message to be received by the second user through the electronic device associated with the second user, using the selected option of communication, based on the one identifier associated with the second user, in view of the second user not blocking the first user from reaching the second user,

wherein a piece of information regarding the second user blocking the first user from reaching the second user is stored in a storage medium if the second user has blocked the first user from reaching the second user, with the piece of information being based on at least an input previously submitted by the second user,

wherein the method comprises determining availability of the second user,

wherein the method requires contact information associated with the second user to allow the second user to receive messages via the network-based portal, wherein even when the message is received by the second user through the electronic device associated with the second user based on the one identifier associated with the second user, the contact information associated with the second user is not provided via the network-based portal to the first user through the electronic device associated with the first user, and

wherein the one identifier associated with the second user is distinct from the contact information associated with the second user.

'810 Patent 20:2–58.

### III. Legal Standards

#### A. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level."

6

*Twombly*, 550 U.S. at 555. In evaluating whether a complaint sufficiently states a claim, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but need not consider "legal conclusions, elements of a cause of action, bare assertions devoid of further factual enhancement, unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted) (cleaned up).

### B. Alice Two-Step Framework

Section 101 of the Patent Act defines patent eligible subject matter: Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title. 35 U.S.C. § 101. The Supreme Court has long held that there are certain judicial exceptions to this provision: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (collecting cases). "Patent eligibility, governed by 35 U.S.C. § 101, is evaluated according to Federal Circuit law, and presents 'a question of law, based on underlying facts.'" *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (citation omitted). In *Alice*, the Court supplied a two-step framework for analyzing whether claims are patent eligible. First, a court determines whether a claim is "directed to" a judicial exception, such as an abstract idea. *Alice*, 573 U.S. at 218. If the claim is directed to eligible subject matter, the inquiry ends. *See Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). However, if the claim is directed to an abstract idea, the court considers whether the claim contains an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (internal quotation marks omitted). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage. . . . when there are no factual allegations that, taken as

7

true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (citations omitted).

## IV. Discussion

Epic argues the Asserted Claims are directed to patent ineligible subject matter under 35 U.S.C. §101 under *Alice*. [DE 25] 1. Epic asserts claim 1 of the '810 Patent ("'810 Claim 1") is directed to the abstract idea of managing electronic communications, [DE 26] 15–24, and does not recite an "inventive concept", *id*. at 24–26. Epic also asserts that for a §101 analysis, '810 Claim 1 is representative of the remaining claims because the remaining claims are not meaningfully different. *Id*. at 27–28. IngenioShare disagrees in all aspects. *See generally* [DE 30]. The court considers each in turn.

### A. Procedural Challenges

IngenioShare argues that the court should deny Epic's motion because claim construction is needed. [DE 30] 22–23. The court is unpersuaded. "If there are claim construction disputes at the Rule 12(b)(6) stage, . . . the court must proceed by adopting the non-moving party's constructions or the court must resolve the disputes to the extent needed to conduct a § 101 analysis, which may well be less than a full, formal claim construction" *Aatrix*, 882 F.3d at 1125 (citations omitted). Claim construction is not an inviolable prerequisite to an eligibility determination under § 101. *See Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (affirming dismissal, without claim construction, where patentee "provided no proposed construction of any terms . . . that would change the § 101 analysis"). "If claims are directed to ineligible (or eligible) subject matter under

8

all plausible constructions, then the court need not engage in claim construction before resolving a Section 101 motion." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023).

IngenioShare argues that "Epic's Motion depends on reducing the claimed 'network-based portal' to a generic computer component." [DE 30] 22. But rather than proposing a "network-based portal" construction for the court to adopt—which it does not[3]—IngenioShare argues that the court must deny Epic's motion because the court (or other tribunals[4]) has not substantively construed the term "network-based portal." *See id.* at 22–23. IngenioShare must do more than invoke a generic need for claim construction to avoid grant of a motion to dismiss under § 101. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023). Also, IngenioShare does not argue that a claim construction proceeding is needed for the court to have a full understanding of the claims. *Compare* [DE 30] 29–31 *with Aatrix,* 882 F.3d at 1128. Since there is no dispute on construction of "network-based portal," or any other claim terms, bearing on a § 101 analysis for this court to resolve, the court considers the merits of Epic's motion. *See id.*; *Content Extraction*, 776 F.3d at 1349; *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024).

Epic argues '810 Claim 1 is representative of the remaining independent claims (claim 11 of the '810 patent, claim 46 of the '038 patent, and claim 1 of the '727 patent). [DE 26] 27 (citing Ex. A [DE 26-1] 2–4). When the claims at issue are substantially similar and linked to the same

---

[3] IngenioShare essentially recites its arguments relating to *Alice* step one (below). *Id.* "First, taken as a whole, the <u>claims</u> recite an integrated solution that uniformly manages multiple communication modes and channels in accordance with user-defined privacy, accessibility, and confidentiality preferences. That is a computer-centric improvement—not a results-oriented aspiration." *Id.* (emphasis added).

[4] In *Epic*, 2025 WL 1189931 at *1–5, the Federal Circuit affirmed the Board's "network-based portal" claim construction that the "network-based portal" resides on the server side, not client-side, of a network.

9

ineligible concept, a court may limit the analysis of a § 101 challenge to a representative claim. *See Cleveland*, 859 F.3d at 1360. A court "may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). The representativeness inquiry must be tethered to the claim language. *C.f. Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (discussing characterization of alleged abstract idea under § 101 analysis).

IngenioShare contends that "Epic's failure to analyze the dependent claims is [] fatal to its Motion" because "[i]t is black letter law that every claim element in all the claims must be substantively considered." [DE 30] 30 (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). IngenioShare's argument misses the broader point. If '810 Claim 1 is representative for § 101 purposes, then the remaining claims, both independent and dependent, are substantively considered for that purpose. *See Cleveland*, 859 F.3d at 1359–60. The court agrees with Epic that the remaining claims to not add distinctive significance for § 101 purposes, *see* [DE 26] 27–28; [DE 26-1] 2–4.

Epic contends that the only additional function recited by the '727 patent is "receiving a second message from a user to the first user," which does not add a distinctive significance under §101. *See* [DE 26] 27 (citing '727 Claim 1). IngenioShare does not respond to Epic's contention, *see* [DE 30] 29–31, and the court agrees with Epic. IngenioShare asserts '810 Claim 1 does not represent the '727 claims because '727 Claim 1 includes the limitation that users are provided an option to keep their contact information confidential. *Id*. at 29–30. However, IngenioShare does not explain how this limitation adds "distinctive significance," *Berkheimer*, 881 F.3d at 1365, for a §101 analysis. *See also* '810 Patent 20:52–55 ("the contact information associated with the

10

second user is not provided via the network-based portal to the first user through the electronic device associated with the first user" (Claim 1)). The remaining limitations of the '727 and '038 independent claims require a type of "contact information" (e.g. phone number or email address), a mode of communication (e.g. text, voice, or image), a type of device used (e.g. personal computer or mobile phone), a restriction ("block") on a selected mode of communication, or an optional provision to users to keep contact information confidential. *See* [DE 26-1] 2–4; [DE 26] 27. However, these limitations do not create a distinctive significance which prevents the court from treating '810 Claim 1 as representative. *C.f. Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (finding claim elements for selecting information, by content or source, "d[id] nothing significant to differentiate a process from ordinary mental processes"); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 (Fed. Cir. 2016) (finding dependent claims constituted choices from within a range of existing content or hardware); *Content Extraction*, 776 F.3d at 1348–49 (finding limitations recited routine functionality). In response, IngenioShare merely identifies the additional limitations without offering an explanation (again) for why these limitations add a distinctive significance for § 101 purposes. *See* [DE 30] 29–30. Plaintiff highlights the single identifier feature for various forms of communications. *See id.* at 30–31. But this feature is present in '810 Claim 1. *See* '810 Patent 20:17–18 ("wherein all of the communication options use one identifier associated with the second user . . ."); *id.* at 20:56–58 ("wherein the one identifier associated with the second user is distinct from the contact information associated with the second user"). For reasons similar to the independent claims, the court finds that the remaining dependent claims do not add a distinctive significance to any claim limitation

11

not found in '810 Claim 1.[5] *See* [DE 26] 28; *Affinity*, 838 F.3d at 1264; *Elec. Power*, 830 F.3d at 1355; *see also directPacket Rsch., Inc. v. Polycom, Inc.,* No. 2024-1147, 2025 WL 1752247, at *4 (Fed. Cir. June 25, 2025).  Thus, for the purposes of Epic's § 101 challenge, the court finds '810 Claim 1 representative of the remaining claims because the remaining claims are "substantially similar in that they recite little more than the same abstract idea [described below]," *Content Extraction*, 776 F.3d at 1348.

### B. *Alice* Step One – Abstract Idea

Epic bears the burden of establishing that the Asserted Claims are ineligible under § 101. *See Mobile*, 110 F.4th at 1291.  Epic argues that the Asserted Claims are directed to the abstract idea of managing electronic communications [DE 26] 15–16, while IngenioShare argues that the Asserted Claims are directed to a specific improvement of computer-network capabilities [DE 30] 14.

The Supreme Court has set a two-step inquiry to determine whether a patent claim is ineligible under § 101.  *Alice*, 573 U.S. at 218.  At step one, a court determines whether the claim at issue is "directed to" a patent ineligible concept, such as an abstract idea.  *Alice*, 573 U.S. at 218 & n.3; *see also Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018) ("The question of abstraction is whether the claim is 'directed to' the abstract idea itself." (citation omitted)).  If the claim is not directed to a patent-ineligible concept under step one, then the claims satisfy § 101 and a court's inquiry ends.  *See Core Wireless Licensing S.A.R.L. v. LG*

---

[5] IngenioShare argues that Epic's assertions about representativeness are contradicted by Epic's Markman Brief submitted in the Texas proceeding.  [DE 30] 31 (citing "multimedia messaging" and "group messaging" claim terms [DE 30-1] ('810 Patent)).  IngenioShare's argument is underdeveloped and, importantly, does not explain the import of these terms for § 101 purposes. The court notes that Epic's brief states "[i]t is clear from IngenioShare's *infringement contentions* and Epic Games' *invalidity contentions* that a dispute exists about the meaning . . . of certain claim terms." [DE 30-1] 6 (emphasis added).

12

*Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017)).

To evaluate claims under *Alice* step one, courts look at "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (quotations omitted); *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1063 (Fed. Cir. 2026). At *Alice* step one, the court "focus[es] on the claims, not the specification, to determine eligibility, because 'the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method.'" *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 139 F.4th 1332, 1337 (Fed. Cir. 2025) (citation omitted) (analyzing system claim). At the same time, the claims are considered in light of the specification to determine "whether 'their character as a whole is directed to excluded subject matter.'" *Enfish*, 822 F.3d at 1335 (quoting *Internet Patents,* 790 F.3d at 1346). In software- or computer-centric cases, the court asks "whether the focus of the claim is on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335–36 (cleaned up); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018); *GoTV*, 166 F.4th at 1064. "The step one inquiry often turns to the question of what the patent asserts as the claimed advance over the prior art." *See Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024), *cert. denied,* 145 S. Ct. 1924 (2025). The court finds that '810 Claim 1 as a whole is "directed to" the abstract idea of managing electronic communications through the internet for which computers are invoked merely as a tool.

The '810 Patent claims "a computer-implemented method for managing electronic communications using at least a network-based portal at least based on Internet protocol." *Id.* at

13

20:2–4 (Claim 1 preamble). The court agrees with Epic that the claims are written using result-based functional language [DE 26] 16. Careful not the overgeneralize claims in a § 101 analysis, *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020), the method of '810 Claim 1 recites five functions: (1) providing communication options to a first user to select a communication option for a message from the first user to a second user; (2) receiving an indication about the first user's selected communication option; (3) permitting the second user to block the first user; (4) enabling the message to be received by the second user using the selected communication option, and (5) determining the availability of the second user. *See* '810 Patent 20:2–58. But the claim does not recite *how* to concretely achieve these results.

'810 Claim 1 recites the use of computing components. The recited computing components are a "network-based portal at least based on Internet protocol," '810 Patent 20:3–4, and an "electronic device associated with [a] user," *id*. at 20:8–9; 20:24. As discussed above, IngenioShare does not offer a construction of "network-based portal" for the court to adopt. Rather, IngenioShare lists the claimed method steps and asserts the conclusion that "the *claimed* network-based portal is not a generic portal" [DE 30] 18. Neither the claims, specification, nor IngenioShare offer a "network-based portal" construction that suggests the network-based portal recited in the claims has a unique or non-generic definition.[6] *See* '810 Patent 5:42–52 ("[T]he

---

[6] In *Epic v. IngenioShare*, the Federal Circuit affirmed that Board's construction of "network-based portal" as residing on the server side of a network. 2025 WL 1189931 at *5. In deciding what "side" the network-based portal was located, the Federal Circuit discussed the Board's consideration of "dictionary definitions as to the meaning of the word 'portal.'" *Id*. at 4; *see also, e.g., Epic IPR*, No. IPR2022-00202, Paper No. 29, at 16. IngenioShare's expert Dr. George Rouskas provided two definitions to the Board: (i) "In the context of the Internet, a portal refers to any commonly used website serving as an entry point to the Internet, usually with many links to a wide variety of information, data, resources, and services;" (ii) "Portal is a term, generally synonymous with gateway, for a World Wide Web site that is or proposes to be a major starting

14

system can establish connections between the caller and the user . . . . The system can be a portal based on the web."); *id.* at 6:22–23("[A] [user] calls a portal. As an example, the portal can be the user's [Internet Service Provider]"); *id.* at 6:64–66 ("a message is electronically conveyed by a central network server, such as a web server based on Internet protocol. A portal or gateway approach could provide general Internet access . . . ."); *id.* at 19:1–5. The electronic device can be any computing device having communication capabilities "includ[ing] personal computers, personal digital assistants, pagers or mobile telephones." *Id.* at 8:13–17.

Other recited features do not aid in to *how* to concretely achieve the results of the claimed method. '810 Claim 1 recites an "identifier" associated with the first and second users. *See id.* 20:9–11, 17–18; [DE 30] 16 (explaining that both users are provided a claimed identifier); *see also* '038 Patent 27:53–55 (Claim 46); '727 Patent 20:2–4 (Claim 1). But the claimed "identifier" has little structure or content. '810 Claim 1 only recites the limitation that "the one identifier associated with the second user is distinct from the contact information associated with the second user." '810 Patent 20:56–58; *see also* '038 Patent 28:35–39 (reciting that the first user identifier is distinct from first user's contact information) (Claim 46); '727 Patent 20:53–57 (same) (Claim 1). The specification states the "identifier" is either an "access identifier" or a "digital identity." '810 Patent 4:17–23. It further explains that an email address or driver's license number can be an "access identifier for the different communication addresses from different communication modes[,] [and] [t]he access identifier can become the user's digital identity." *Id.*; *see also* [DE

---

site for users when they get connected to the Web or that users tend to visit as an anchor site." 2025 WL 1189931 at *4 (citations omitted). The Federal Circuit agreed that the definitions, in addition to two non-conflicting definitions provided by Epic, provided context for understanding the meaning of a "network-based portal" and found that construing "network-based portal" to reside on the server side of a network was not inconsistent with the claim language or specification. *Id.* at *4–5. The Federal Circuit also noted that the "definitions generally describe portals as 'websites' or 'web-based platforms.'" *Id.* at *4.

30] 8–9 (citing '810 Patent 4:15–23)). The "identifier" for the first user "depend[s] on a prior registration process by the first user regarding the use of the network-based portal." '810 Patent 20:9–11 (Claim 1).[7] In arguing that this feature is not conventional or abstract, IngenioShare cites details in the specification that are not recited in the claims. *See* [DE 30] 8, 17 (citing '810 Patent 5:60–62, 6:6–12, and figs. 1–5). However, the specification explains that the details provided are illustrative. *See* '810 Patent 3:35–38 (explaining figures are for "explanatory purposes as the invention extends beyond these limited embodiments"); 19:36–39 ("Numerous specific details are set forth in order to provide a thorough understanding of the present invention. However, it will become obvious to those skilled in the art that the invention may be practiced without these specific details."); *c.f. Trinity*, 72 F.4th at 1363 ("Repeatedly, the patents confirm they do not limit the invention to specific technological solutions."). More broadly, "only features that are claimed, not unclaimed details that appear in the specification, can supply something beyond ineligible matter." *GoTV*, 166 F.4th at 1061; *see also ChargePoint, Inc. v. Semaconnect, Inc.*, 920 F.3d 759, 769–70 (Fed. Cir. 2019). Finally, defining or limiting the method to particular content or a type of information, i.e. "contact information" or "text messaging and voice communication," '810 Patent 20:2–58, does not redirect the claim to patent eligible matter. *See Elec. Power*, 830 F.3d at 1353 ("Information as such is an intangible. Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas." (citations omitted)). '810 Claim 1 is directed to a generic user problem of managing potentially unwanted electronic communications, not computer-specific functions. Thus, '810 Claim 1 claims results, but it does not describe *how* to achieve the results in

---

[7] '038 Patent Claim 46 and '727 Claim 1 recite that the "identifier" must be "previously set by the [] user via the network-based portal." '038 Patent 27:53–55, 27:66–28:1; '727 Patent 20:2–4, 14–16.

a non-abstract way. *See Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025) ("[T]he claims do not delineate steps through which the machine learning technology achieves an improvement."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.').

"A claimed method's similarity to 'fundamental practices long prevalent' is [] another clue that the claims may be abstract and unpatentable." *Beteiro*, 104 F.4th at 1356 (quoting *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 219 (2014))). Epic offers a persuasive analogy that supports why the claims are "directed to" an abstract idea of managing electronic communications: a receptionist in an office building. *See* [DE 26] 16–17; *see also GoTV*, 166 F.4th at 1065 (using analogy of a pattern for a dress or trousers). Here, the portal functions like a receptionist. When a visitor-first user arrives, or makes remote contact, and requests to communicate with an employee-second user, the receptionist-portal may provide the visitor-first user with communication options: Which may include calling the employee-second user, taking a message (text, audio, or visual), or providing the visitor-first user with the employee-second user's voicemail ("providing a plurality of communication options to a first user to be selected" '810 Patent 20:5–6 (Function 1)). But before doing so, the receptionist-portal may require certain information from the visitor-first user before the receptionist-portal enables the selected communication option ("a prior registration process" *id.* at 20:10). The visitor-first user can pick the preferred option ("receiving an indication regarding one of the . . . communication options" *id.* at 20:22–23 (Function 2)), and the receptionist-portal will enable the communication ("enabling . . . the message to be received by the second user . . . using

17

the selected option of communication" *id.* at 20:31–34 (Function 4)). The receptionist-portal can prevent the visitor-first user from communicating with the employee-second user, at the employee-second user's direction ("permitting the second user to block the first user" *id.* at 20:28 (Function 3)). At some point, the receptionist-portal determines the availability of the employee-second user ("determining availability of the second user" *id.* at 20:44–45 (Function 5)). The receptionist-portal does not have to disclose the contract information of one user to the other. The court is unpersuaded by IngenioShare's arguments that the receptionist analogy is inappropriate. *See* [DE 30] 18–19; *see also Nemet*, 591 F.3d at 255 (the court is not required accept unwarranted inferences or arguments (citing *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n. 26 (4th Cir.2009))). Epic's analogy reinforces the court's finding that the claimed communication management functions are "broad and familiar concept[s] concerning information distribution that is untethered to any specific or concrete way of implementing it." *Affinity*, 838 F.3d at 1258.

IngenioShare argues that the claim is "directed to a specific improvement to computer-network capabilities" which "solv[es] the Internet-specific problem of unwanted communications across an ecosystem of proliferating and fragmented channels." [DE 30] 14. However, the problem identified is not an internet-specific problem. The specification explains that the "ways that others can send us information have *increased* significantly," including "desk phones, fax, [and] cell phones." '810 Patent 1:49–53 (emphasis added). Introducing more communication modes through the internet, "electronic mail" and "instant messages" *id.* at 52–53, does not mean that managing those modes is an internet-specific problem. IngenioShare relies on *Enfish* and *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, (Fed. Cir. 2019), to argue that '810 Claim 1 is directed to a technological improvement. The Federal Circuit in *Enfish* emphasized that "the self-referential table recited in the claims ... [was] a **specific type of data structure** designed to

18

improve the way a computer stores and retrieves data in memory." *Enfish,* 822 F.3d at 1339 (emphasis added). In *SRI*, the Federal Circuit found that the claims "improve[d] the technical functioning of the computer and computer networks by reciting a **specific technique for improving computer network security**" and "actually prevent[ed] the normal, expected operation of a conventional computer network." 930 F.3d at 1304 (emphasis added). '810 Claim 1 does not recite a specific technique for improving computer or network functionally. The '810 Patent's specification bolsters the court conclusion.

IngenioShare contends that the "network-based portal" is the core of the solution "to the problems in the prior art," by "routing multiple forms of communication to a user based on the user's . . . identifier, without disclosing the user's contact information." [DE 30] 16 (citing [DE 24] ¶¶ 5–30).[8] While the specification was "not a model of clarity" for where the "network-based portal" resided, *Epic*, 2025 WL 1189931 at *3, the specification offers a limited discussion about the state of computers or network capabilities, or weaknesses, in the prior art. *See generally* '810 Patent; *c.f. id.* at 19:40–46 ("The description and representation herein are the common meanings used by those experienced or skilled in the art to most effectively convey the substance of their work to others skilled in the art. . . . [W]ell-known methods, procedures, components, and circuitry [may] have not been described in detail to avoid unnecessarily obscuring aspects of the present

---

8 At step one, the court does not read allegations found in IngenioShare's complaint [DE 24] into the specification to understand what the claim is directed to. In a § 101 analysis, the most appropriate step for the court to consider the complaint is at step two. *See Aatrix*, 882 F.3d at 1127–28; *c.f. Broadband*, 113 F.4th at 1369 (Fed. Cir. 2024) ("When it comes to analyzing conventionality, there is no 'bright line between the two steps.' Yet we must take care to avoid allowing a conventionality analysis at step one to render step two superfluous (except where the claimed innovation at step two is nothing more than practice of the abstract idea of step one). To find otherwise would ignore the Supreme Court's guidance in *Alice*, which clearly set forth a two-step inquiry." (citations omitted)). *But c.f. Trinity*, 72 F.4th at 1363 ("Even accepting [the complaint's] statements as true . . . . Our focus is on the claims, as informed by the specification." (citation omitted)).

invention."). Indeed, the problem described in the specification was "a need to help manage the numerous modes of communication" because managing the communication modes "[was] quite time consuming." *Id.* at 1:49–61. The specification "list[s a few different modes of communication, . . . from standard desk phones, fax, cell phones, electronic mails, and instant messages." *Id.* at 1:50–53. Here, the specification frames the inventor's problem in terms of managing communication modes and controlling when, how, and by whom a person may be contacted, not how to improve computer or network technology. *See Trinity*, 72 F.4th at 1363 ("The specifications frame the inventor's problem in terms of how to improve existing polling systems by performing progressive polling, not how to improve computer technology. . . . These passages confirm that the problem facing the inventor was how to perform the abstract idea of matching based on questioning not an improvement to computer technology"). In *Enfish*, the Federal Circuit explained that teachings from the specification "underscored" and "bolstered" the court's conclusion the claims were directed to an improvement in the existing technology. 822 F.3d at 1337 ("[t]he specification also teaches that the self-referential table functions differently than conventional database structures"); *see also SRI*, 930 F.3d at 1303–04 (relying on teachings in the specification about the technological state of the prior art when determining if the claim was directed to technological improvement); *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309–10 (Fed. Cir. 2020) ("The specifications explain that known network monitors were unable to identify disjointed connection flows to each other, and the focus of the claims is a specific improvement in computer technology. . . ."); *Core Wireless*, 880 F.3d at 1363 ("[The specification] teaches that the prior art interfaces had many deficits relating to the efficient functioning of the computer. . . ."). The specification of the '810 Patent lacks such teachings. At step one, the court

20

is unconvinced that the specification identifies a technological weakness in the prior art that patent claims to improve.

Still, IngenioShare contends the "technical solution" was "a network-based portal that enable private, multi-channel electronic communication while shielding users' contact information." [DE 30] 6. The '810 Patent is not explicit about the technological state of the prior art. From that silence, IngenioShare invites the court to infer that the cited embodiments, features, or functions were not present in the prior art, and thus find that the claims were "directed to" improvements over networked communications. *See* [DE 30] 16; *see also id.* at 2–4, 14–18 (citing '810 Patent 2:7–23 (apparatus embodiment), 3:43–58 (embodiment relating to communication source and status of user), 3:63–66 (identifying users having contact information for multiple modes of communication), 4:13–23 (identifier feature), 4:25-38 (embodiment related to status indicator), 4:53–62 (embodiment relating to database), 5:22–52 (embodiment related to potential confidentiality based on digital identity), 5:60–62 (describing intelligent communication modes), 6:6–12 (describing features to define "contact classes," "urgency classes," and "number of status" as well as setting up an "Access Priority Database"), 20:2–58 (Claim 1), and figs. 2–5). IngenioShare's inferences are unwarranted. *See Nemet*, 591 F.3d at 255. As discussed above, the computing components used are generic, and the specification does not support a different understanding.

Lastly, limiting the management of the communication modes to the Internet-based modes does not lead to the conclusion that the claims are "directed to" a technological improvement. *See GoTV*, 166 F.4th at 1064 ("we have made clear that an abstract idea remains an abstract idea even when narrowed—e.g., by subject matter—to a particular use or environment" (collecting cases)). The court finds that the claims do not "directed to" a technique to improve the functionality of

computers or networks. Because the court finds a sufficient basis to conclude that '810 Claim 1 is "directed to" an abstract idea—based on its result-based claiming and Epic's prior art analogy—it does not address Epic's alternative argument that '810 Claim 1 is a combination of abstract ideas, [DE 26] 19–20.[9] Thus, the court finds that the claims as a whole are directed to an abstract idea under *Alice* step one, and the court proceeds to *Alice* step two.

### C. *Alice* Step Two – "Inventive Concept"

Epic argues that the claim does not contain an inventive concept [DE 26] 24, while IngenioShare argues that the inventive concept is provided by two claim elements or the ordered combination of the elements [DE 30] 23–24. The court agrees with Epic. At step two, the court determines whether the claims include an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." 573 U.S. at 221 (cleaned up) (quotation omitted). The court searches whether the claim(s) at issue contains an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself." *Alice*, 573 U.S. at 217–18 (cleaned up) (citation omitted). "Step two 'looks more precisely at what the claim elements add' to determine if 'they identify an inventive concept in the application of the ineligible matter to which the claim is directed.'" *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)). "Claim limitations that recite 'conventional, routine and well understood applications in the art'

---

[9] IngenioShare argues that Epic's motion fails because "Epic never performs the claim-to-claim comparison that *Enfish* **requires**." [DE 30] 21 (emphasis added) (citing *Enfish*, 822 F.3d at 1334 (stating "both this court and the Supreme Court have found it **sufficient** to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases" (emphasis added)). The court agrees with Epic that *Enfish* does not require comparing the language of the challenged claims to the language of abstract or non-abstract claims in other cases. *See* [DE 31] 9.

are insufficient to 'supply an inventive concept.'" *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (quoting *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1378 (Fed. Cir. 2015)). "Whether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law." *Id.* "Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court also considers whether a complaint adequately alleges the disputed claim(s) contains an inventive concept to survive a § 101 eligibility analysis under Rule 12(b)(6). *See Aatrix Software, Inc. v. Green Shades Software, Inc*, 882 F.3d at 1127–28. Sources properly considered on a motion to dismiss include the complaint, the patent, and materials subject to judicial notice. *Id.* at 1128.

Epic argues that '810 Claim 1 is merely an application of the abstract idea of managing electronic communications on the Internet using conventional techniques and no element or ordered combination of elements results in an "inventive concept." [DE 26] 24–26; [DE 31] 11. As discussed above, '810 Claim 1 recites generic computing components—a "network-based portal" and an "electronic device"—which cannot confer eligibility. *See Elec. Power.*, 830 F.3d at 1355 ("The claims at issue do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,' but merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices." (citation omitted)); *Customedia,* 951 F.3d at 1366 ("Aside from the abstract idea of delivering targeted advertising, the claims recite only generic computer components, including a programmable receiver unit, a storage device, a remote server and a processor."); *c.f. Ultramercial, Inc. v. Hulu,*

*LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("Narrowing the abstract idea of using advertising as a currency to the Internet . . . is insufficient to save a claim."). The claimed "identifier" does not contain an inventive concept. Briefly, an "identifier associated with [a] user," '810 Patent 20:18 (Claim 1), is distinct from the user's "contact information," *id.* at 20:56–58, and may include, but is not limited to, the user's other types of identification such as the user's driver license number, *see id.* at 4:17–23. IngenioShare's assertion that the claimed "identifier" was unconventional, non-routine, or not well-known to a skilled artisan at the time of the patent is inadequately supported. *See* [DE 30] 25–28; *see also* [DE 24] 12, 26 (conclusory allegations of inventive concept).

IngenioShare's contends the "invention(s) leverages the convergence of multiple communication modalities onto the Internet Protocol . . . . [which] came possible in the late 1990's with the development of protocols such as the Session Initiation Protocol (SIP), as defined in RFC 2543 (March 1999), which facilitates the establishment and management of realtime communications – such as voice, video, and messaging – over the Internet. Nonetheless, full convergence occurred gradually over several years [from 1999]." [DE 24] ¶ 18; *see also* '810 Patent 4:11–13 ("a number of embodiments depend on the different modes of communication converging onto the internet protocol platform"); *see also id.* at 8:44–47 & fig. 6 ("Other networks support faster data channels and voice channels, such as GPRS, UMTS, G4, GSM, CDMA and various protocols, such as UDP, TCP, WAP, PDP other protocols"). IngenioShare characterizes the "network-based portal" and "identifier" as central features, [DE 30] 24–26, which addressed an "unmet need for a system and method to efficiently manage multiple communication modes while uniformly applying a user's privacy, accessibility, and confidentiality preferences across those modes," [DE 24] ¶ 14. The court agrees that the "network-based portal" and "identifier" are central features. However, the court "may assume that the techniques claimed are

24

'groundbreaking, innovative, or even brilliant,' but that [may not] be enough for eligibility." *SAP*, 898 F.3d at 1163 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 591 (2013)); *see also Ultramercial* 772 F.3d at 716 ("that some of the eleven steps were not previously employed in this art is not enough—standing alone—to confer patent eligibility"). Like the specification, the complaint does not allege that claimed invention improves the functions of computers or computer networks. *Compare* [DE 24] ¶¶ 9–38 *with Aatrix,* 882 F.3d at 1127 ("The complaint alleges that the claimed software uses less memory, results in faster processing speed, and reduces the risk of thrashing which makes the computer process forms more efficiently"); *c.f. Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1349–50 (Fed. Cir. 2018) ("[T]he claimed invention moves a software-verification structure to a BIOS location not previously used for this computer-security purpose and alters how the function is performed, . . . yielding a tangible technological benefit . . . ."). The court agrees with Epic that IngenioShare's assertions of inventiveness only "concern a user's experience and satisfaction with the process and results," [DE 31] 2 (citing *Int'l Bus. Machines v. Zillow*, 2024 WL 89642, at *2 (Fed. Cir. Jan. 9, 2024)), by "streamlin[ing] the process of managing multiple contact points for a recipient," [DE 30] 9; [DE 24] ¶ 20. The Federal Circuit has found "inventive concepts in cases where the claims have fundamentally changed or improved *how* a computer functions." *United,* 139 F.4th at 1339 (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350–51 (Fed. Cir. 2016); and *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)). Simply, '810 Claim 1 merely applies an abstract idea and does not fundamentally change or improve how a computer functions.

The cited portions of IngenioShare's complaint offer conclusory allegations about the prior art and then recite claim steps or alleged benefits. *See* [DE 24] ¶ 22 ("In contrast to the prior art, IngenioShare's claimed and inventive approach allows users to identify the other communicating

party without revealing any contact or personal information"); *id.* at ¶ 26 ("IngenioShare's claimed invention(s) set forth sufficient detail regarding how to implement the inventive concept in a specific and concrete manner that was not known or practiced in the art as of the patents' priority date."); *id.* at ¶ 29 ("Another implementation of a specific and novel communication process includes . . ."). "[C]onclusory allegations that the prior art lacked elements of the asserted claims are insufficient to demonstrate an inventive concept." *Trinity,* 72 F.4th at 1366. The court disagrees with IngenioShare that "[a]t a minimum, IngenioShare's well-pled allegations create a material fact dispute as to what is 'well-understood, routine and conventional to a skilled artisan' that cannot be resolved on the pleadings." [DE 30] 29 (citation omitted). IngenioShare's complaint fails to adequately allege that '810 Claim 1 contains an inventive concept such that it survives a § 101 motion. *See Trinity,* 72 F.4th at 1365–66.

Concerning whether '810 Claim 1 includes an "inventive concept," IngenioShare asserts the "network-based portal" is "novel" and relies on the Board and Federal Circuit's decisions regarding Epic's IPR petitions. *See* [DE 30] 4, 24; [DE 24] ¶¶ 27–31; *see also, e.g., Epic IPR,* No. IPR2022-00202, Paper No. 29, at 8 (deciding IPR petition under 35 U.S.C. § 103 (pre-AIA)). IngenioShare cites no Federal Circuit caselaw supporting its use of the IPR proceedings. *See generally* [DE 30]. An IPR petition may challenge a patent claim raised under 35 U.S.C. § 102 (novelty) and § 103 (obviousness)—not § 101 (subject matter). *See* 35 U.S.C. § 311(b) (prior art consisting of patents or printed publications). Moreover, eligibility, novelty, and obviousness are separate inquiries. *Diamond v. Diehr,* 450 U.S. 175, 190 (1981); *Two-Way Media,* 874 F.3d at 1339–40. A party conflates the search for an "inventive concept" within a claim with the separate novelty and obviousness inquires when it uses an IPR petitioner's unsuccessful challenge as evidence of an inventive concept. *See Constellation Designs, LLC v. LG Elecs. Inc.,* 174 F.4th

888, 905–906 (Fed. Cir. Apr. 28, 2026). "To save a patent at step two, an inventive concept must be evident in the claims." *Two-Way*, 874 F.3d at 1338. Assertions of novelty and the Board's conclusions, as affirmed by the Federal Circuit, "do[] not answer the question whether the claims [include] an inventive concept within the meaning of the second step of the patent-eligibility test in *Alice*."[10] *First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*, 389 F. Supp. 3d 456, 472 (E.D. Tex. 2019).

Finally, IngenioShare does not explain what is non-conventional about the order of the claim elements. *See* [DE 30] 29. The court finds the remaining arguments unpersuasive. *See, e.g.,* [DE 30] 26 ("Moreover, the claimed 'identifier' is part of the title of all three of IngenioShare's patents . . . ." (citing MPEP § 601.01)). The court finds that Epic has met its burden to show that '810 Claim 1 does not contain an inventive concept.

Thus, the court finds that '810 Claim 1 is directed to an abstract idea and lacks an inventive concept. Consequently, '810 Claim 1 is invalid because it is patent ineligible under 35 U.S.C. § 101. Because '810 Claim 1 is representative of the remaining claims, the court finds that the remaining claims are also invalid on the same grounds.

---

[10] The court notes that the dispositive element underlying the Board's conclusion was the location of the "network-based portal." *See Epic IPR*, No. IPR2022-00202, Paper No. 29, at 36 ("we construe 'network-based portal' as [IngenioShare] advocates, namely as residing on a server side of a network. Because [Epic] does not show that Diacakis discloses a 'network-based portal' as so construed, we conclude that [Epic] does not show, by a preponderance of the evidence, that independent claim 1 is unpatentable under 35 U.S.C. § 103(a) over Diacakis" (citation omitted)); *id.* at 37 ("[Epic] relies on Tanigawa's disclosure of a <u>client-resident</u> user interface to meet the claim's recitations of a "network-based portal." (emphasis added)); *see also Epic,* IPR2022-00291, Paper 30 at 38–40 ('727 Patent); *Epic,* IPR2022-00294, Paper 30 at 34 ('038 Patent); *Epic,* IPR2022-00295, Paper 27, at 35–36 ('038 Patent).

27

## V.  Conclusion

Based on the foregoing, the court GRANTS Defendant's motion to dismiss [DE 25]. Plaintiff's first amended complaint is dismissed with prejudice.  The clerk is DIRECTED to close this case.

SO ORDERED this _____4th_____ day of June, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE